[No. 33743.   Department One.   April 4, 1957.]

*In the Matter of the Application for a Writ of Habeas Corpus of* FRED MARK WILKEN, *Petitioner,* v. PAUL J. SQUIER, *as Superintendent of the State Reformatory, Respondent.*[1]

[1]Reported in 309 P. (2d) 746.

*Warren Hardy,* for petitioner.

*The Attorney General* and *Michael R. Alfieri, Assistant,* for respondent.

ROSELLINI, J.—Vernon Pfleiderer and Fred Mark Wilken were charged with the crime of robbery, in the superior court for Kitsap county, on August 8, 1955; they entered pleas of guilty and were sentenced to twenty years confinement in the Washington state reformatory.

Fred Mark Wilken, hereinafter called the defendant, has applied for a writ of *habeas corpus,* alleging: that he is twenty-one years of age; that he has never before had any experience whatsoever with criminal law, nor been arrested, nor tried on any civil offense; that he was arrested about midnight of August 4, 1955, or during the early morning hours of August 5, 1955; that he was not a resident of Kitsap county, and that his parents and other relatives resided at Kalispell, Montana; that he was kept in prison from the time of his arrest to Monday morning, August 8, 1955, when he was taken to court and arraigned; that he was totally ignorant of the fact that intoxication, to such an extent that one is rendered incapable of forming a criminal intent, is a complete defense to robbery charges; that he was not advised of his right to counsel, which was a violation of his constitutional rights; and that because of his ignorance of the law, he waived counsel and pleaded guilty.

The record in this case discloses that defendant and Vernon Pfleiderer were brought before the court; they were questioned as to their age, told by the court that they were charged with the crime of robbery, and were then asked whether they understood the circumstances of the charge. Both answered yes. Then the following took place:

"THE COURT: . . . Now, Mr. Pfleiderer, do you have a lawyer? MR. PFLEIDERER: No, Sir. THE COURT: Do you want a lawyer? MR. PFLEIDERER: No. Sir. THE COURT: You sure you don't want one? MR. PFLEIDERER: No. THE COURT: Mr. Wilken, have you a lawyer? MR. WILKEN: No, Sir. THE

COURT: Do you want a lawyer? MR. WILKEN: No. THE COURT: You sure you don't want one? MR. WILKEN: No— don't want one. THE COURT: All right. Read the charge."

The information was then read to them and both entered a plea of guilty. The court further questioned them as to whether they had a record, how they obtained the gun, etc.

"THE COURT: What possessed you to do this? MR. WILKEN: Too much drinking, Sir. THE COURT: Well, where did you get the gun—Belgian pistol? MR. WILKEN: It was in his name. THE COURT: You knew he had it? You knew he was going to use it? MR. WILKEN: (No Response) THE COURT: You knew he was going to use it for the purpose of holding up this man? MR. WILKEN: I didn't know for sure he was going to use it then. I was passed out in the car. When I woke up,—THE COURT: You mean you didn't wake up until after this robbery? MR. WILKEN: No, it was during that, he woke me up. THE COURT: Well, you have been in the habit of drinking a lot for several years? MR. WILKEN: Yes. THE COURT: How did you happen to pass out this particular night? MR. WILKEN: Just had too much to drink, Sir. THE COURT: Had you been going around from tavern to tavern? MR. WILKEN: No, Sir, we had been on a picnic that day and had drank beer all day long. THE COURT: What kind of a picnic? MR. WILKEN: Ship's picnic."

The defendant and Mr. Pfleiderer both gave the sheriff sworn statements which were received in evidence. They admitted the commission of the robbery in detail. They admitted that they had a beer or two at first, and then another six beers. They further admitted by the written statement that they had previously planned to commit a robbery; that when the defendant went to the station that was robbed, he was "still groggy," but went in; that he took the money out of the till and drove the car away from the scene. They recalled all of the details of the acts about three hours after the crime was committed, and related how they had hidden the money, how they were arrested, where they had purchased the gun, and how much the defendant had paid as his share for the gun.

■ The defendant's writ of *habeas corpus* raises the question whether or not he had competently and intelligently waived the right guaranteed to him under the Fed-

eral and state constitutions to have aid of counsel before entering a plea of guilty. The right to attack a judgment not void on its face on such a ground was recognized in *Thorne v. Callahan,* 39 Wn. (2d) 43, 234 P. (2d) 517.

The right of an accused to appear and defend by counsel is expressly guaranteed by Art. I, § 22 (amendment 10) of the state constitution. In furtherance of this constitutional guarantee, RCW 10.01.110 and 10.40.030 imposes upon the court three duties: (1) to inform the defendant that it is his right to have counsel before being arraigned; (2) to ascertain whether because of the defendant's poverty he is unable to employ counsel, in which event, the court must inform the defendant that the court shall appoint counsel for the defendant at public expense if he so desires; (3) to ask whether the defendant desires the aid of counsel.

Under amendment 6 of the Federal constitution and amendment 10 of our state constitution, a denial of aid of counsel to one pleading guilty to a serious crime is a violation of his constitutional right. *Rice v. Olson,* 324 U. S. 786, 89 L. Ed. 1367, 65 S. Ct. 989, and *Thorne v. Callahan, supra.* In the latter case, we held that

" . . . the fourteenth amendment requires counsel for all persons charged with serious crimes where the assistance of counsel is necessary to their adequate defense, whether or not they request counsel and whether they plead guilty or stand trial."

In *In re Gensburg v. Smith,* 35 Wn. (2d) 849, 215 P. (2d) 880, we held that an accused person may waive his constitutional right to counsel, but this power of waiver, to be effective, must be exercised "competently and intelligently," citing *Johnson v. Zerbst,* 304 U. S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A. L. R. 357; and *Voigt v. Webb,* 47 F. Supp. 743. In the *Johnson* case, the supreme court held that one who asserts that the right to counsel was not intelligently and competently waived has the burden of proof to establish that claim.

Justice Black, in speaking of the wisdom and purpose of the sixth amendment in *Johnson v. Zerbst, supra,* said:

"The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer, to the untrained layman may appear intricate, complex and mysterious. Consistently with the wise policy of the Sixth Amendment and other parts of our fundamental charter, this Court has pointed to '. . . the humane policy of the modern criminal law . . .' which now provides that a defendant '. . . if he be poor, . . . may have counsel furnished him by the state . . . not infrequently . . . more able than the attorney for the state.'

"The '. . . right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceeding against him.' "

■ The plain mandate of our statute imposes a duty on the court to inform a defendant of his constitutional right to have the aid of counsel. Without this information or prior knowledge of his right, a defendant cannot waive his right "intelligently and competently." Merely asking the defendant whether he wants a lawyer does not convey the information that he is entitled to a lawyer at public expense if he is an indigent person, nor does it impress upon him the importance of having legal representation if his rights are to be fully protected. Thus, an indigent defendant's waiver may be made under the mistaken impression that, since he

cannot afford to pay a lawyer, he cannot have legal representation.

In *Thorne v. Callahan, supra,* we pointed out that, where the question presented in a *habeas corpus* proceeding is a claimed violation of a right guaranteed by the constitution of the United States, it is immaterial to the issue whether or not a defendant is guilty of the charge in the information. The question here is whether the defendant competently and intelligently waived his right to counsel.

The court's interrogation of the defendant indicated that the defendant had a possible defense. We said in *State v. Byers,* 136 Wash. 620, 241 Pac. 9, that voluntary intoxication is a possible defense to a crime in which intent is one of the necessary elements, as it is in the case of robbery.

It is true that the sworn statement of the defendant makes this defense doubtful; but it does not inevitably follow that, with the aid of any attorney, he could not have established the defense. This emphasizes the wisdom and purpose of imposing upon the court the duty to properly advise the defendant of his constitutional right. The failure of the court to advise the defendant of his right to counsel, as required by statute, when considered in the light of his youth and inexperience, which were apparent to the trial court; the failure to advise him that he might have a day's time in which to enter a plea and of his right to a jury trial if he so desired; and the shortness of the interval between the arrest and sentence, all contrary to the recitals found in the judgment, rendered the proceedings fundamentally unfair.

It is evident that the defendant did not competently and intelligently waive his right to counsel; and, under the circumstances shown in the record, he was deprived of rights guaranteed by amendment 10 of the Washington constitution and amendment 14 of the United States constitution.

The judgment and sentence of the Kitsap county court is hereby vacated with the direction that defendant be remanded to the custody of the sheriff of Kitsap county to answer the charge of the information and to be dealt with

by the superior court for that county according to law, and in a manner consistent with the views expressed herein.

SCHWELLENBACH, DONWORTH, FINLEY, and FOSTER, JJ., concur.