[No. 35081.   *En Banc.*   October 20, 1960.]

*In the Matter of the Application for a Writ of Habeas Corpus of* ROBERT WAKEFIELD, *Petitioner,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.*[1]

*Smithmoore P. Myers,* for petitioner.

*The Attorney General, Lawrence Ross* and *Stephen C. Way, Assistants,* for respondent.

[1]Reported in 356 P. (2d) 596.

HUNTER, J.—The petitioner, Robert Wakefield, hereinafter called the defendant, was charged with the crime of grand larceny by embezzlement, and upon a plea of guilty, judgment was entered. He was sentenced to the state reformatory at Monroe and later transferred to the state penitentiary at Walla Walla. This matter comes before us on a petition for a writ of *habeas corpus,* as an original petition filed in this court.

The question raised by the petition is whether the defendant was properly advised of his right to counsel and whether he competently and intelligently waived such right.

At the defendant's arraignment, on May 26, 1947, in the Superior Court for Yakima County, the following occurred:

"BY THE COURT: Q. Is your true name Robert Wakefield? A. Yes, your honor. Q. How old are you? A. Thirty. Q. Do you understand the nature of the charge? A. I do now. Q. You say you do? A. Yes, sir. Q. Have you talked to an attorney? A. No, sir. Q. It is your privilege before entering a plea to have an attorney. A. I don't think so. Q. You don't want an attorney? A. No, sir. Q. Are you ready now to enter your plea? A. Yes, sir. Q. What is your plea; guilty or not guilty? A. Guilty.

"THE COURT: A plea of guilty will be received.  . . ."

In *In re Wilken v. Squier,* 50 Wn. (2d) 58, 309 P. (2d) 746 (1957), this court said:

"The right of an accused to appear and defend by counsel is expressly guaranteed by Art. I, § 22 (amendment 10) of the state constitution. In furtherance of this constitutional guarantee, RCW 10.01.110 and 10.40.030 imposes upon the court three duties; (1) to inform the defendant that it is his right to have counsel before being arraigned; (2) to ascertain whether because of the defendant's poverty he is unable to employ counsel, in which event, the court must inform the defendant that the court shall appoint counsel for the defendant at public expense if he so desires; (3) to ask whether the defendant desires the aid of counsel.

"  . . .

"The plain mandate of our statute imposes a duty on the court to inform a defendant of his constitutional right to have the aid of counsel. Without this information or prior knowledge of his right, a defendant cannot waive his right 'intelligently and competently.' Merely asking the defendant

whether he wants a lawyer does not convey the information that he is entitled to a lawyer at public expense if he is an indigent person, nor does it impress upon him the importance of having legal representation if his rights are to be fully protected. Thus, an indigent defendant's waiver may be made under the mistaken impression that, since he cannot afford to pay a lawyer, he cannot have legal representation."

■ In the instant case there is no showing that the defendant had any prior knowledge of his rights. The record discloses that the court did not ascertain whether, because of defendant's poverty, he was unable to employ counsel, and that he was not informed of his right to counsel at public expense. Thus, it is manifest that the defendant was not in possession of such knowledge as would permit him "intelligently and competently" to waive his right to counsel. As a result, the defendant was deprived of a right guaranteed to him by Art. I, § 22 (amendment 10) of the state constitution. See *State v. Dechmann*, 51 Wn. (2d) 256, 317 P. (2d) 527 (1957); *In re Friedbauer v. State*, 51 Wn. (2d) 92, 316 P. (2d) 117 (1957).

■ The respondent argues that *In re Wilken v. Squier* should not be applied to the instant case because this constitutes a retroactive application of a judicial decision. We find no merit to such a contention. The defendant acquired no rights, by virtue of *In re Wilken v. Squier*, which he did not already have.

■ As an alternate basis for issuance of the writ, the defendant asserted that the information failed to state facts sufficient to charge the commission of a crime. This allegation will not be considered, because the sufficiency of the information may not be challenged by *habeas corpus. In re Palmer v. Cranor*, 45 Wn. (2d) 278, 273 P. (2d) 985 (1954); *In re Moon v. Cranor*, 35 Wn. (2d) 230, 212 P. (2d) 775 (1949).

The judgment and sentence of the Superior Court for Yakima County is hereby vacated with the direction that the defendant, Robert Wakefield, be remanded to the custody of the sheriff of Yakima county to answer the charge of the information, and to be dealt with by the superior court for

that county according to law and in a manner consistent with the views expressed herein.

DONWORTH, FINLEY, ROSELLINI, and FOSTER, JJ., concur.

ROSELLINI, J. (concurring)—I believe that the rule which is implicit in the majority opinion is the just and proper rule in a case of this type. As I understand that rule, it is: If the record does not show that the court fully advised the defendant of his right to counsel and does not show that the defendant had prior or independent knowledge of the nature and extent of this right, it will be conclusively presumed that he did not competently and intelligently waive it.

While it is true that the burden is upon the defendant to show that he did not competently and intelligently waive his right to counsel, I do not believe that he should be required to prove a lack of knowledge on his part, for such proof would be impossible in most cases. If he can show that he was not advised of his rights, he has established a *prima facie* case of ignorance, and the burden shifts to the state to show that he had actual knowledge.

It would serve no useful purpose here to set forth again the reasoning which this court followed in deciding in *In re Wilken v. Squier*, 50 Wn. (2d) 58, 309 P. (2d) 746, that an indigent defendant has a right, under the constitution, to be advised of his right to counsel. I think it should be manifest that a fair trial can seldom be assured without the aid of counsel; that, as the constitutions of the United States and of this state recognize, equal justice requires that no man be denied counsel simply because he cannot afford it; and that the right of an indigent to have an attorney paid by the state if he desires one, is an empty right if he has no knowledge of it.

There is in the dissenting opinion an objection that we paraphrased RCW 10.40.030 in the *Wilken* case; but I do not think the paraphrasing departs in any way from the spirit of the statute. The rights of an indigent defendant are constitutional, and the statute reflects legislative confirmation of these rights, but they are not legislatively created.

The dissenting opinion suggests that we are holding that

the trial court loses jurisdiction of the cause if it fails to advise the defendant fully of his right to counsel. I do not so understand our cases. It is true that the case is here upon a writ of *habeas corpus*, which contains an allegation that the defendant is being illegally held, and that the granting of such a writ ordinarily produces the release of the defendant. But the statute (RCW 7.36.130) specifically provides for the writ where it is alleged that a constitutional right of the defendant has been violated, even though he is held under a final judgment of a court of competent jurisdiction. In cases such as this, the defendant is not set free, but is ordered returned to the county in which he was convicted for a new trial. I see no jurisdictional question involved.

MALLERY, J. (dissenting)—The petitioner specifically and unequivocally said he did not want an attorney and, thereupon, knowingly and voluntarily entered a plea of guilty to the charge of grand larceny. His incarceration since 1947 has now been invalidated upon the ground that, even though he did not desire counsel, the trial court still was compelled to make the statement to him, prior to his plea, that "the court shall appoint counsel for the defendant at public expense if he so desires."

The majority purport to do this under the sanction of the federal and state constitutions and the statutes of the state of Washington. In this they are in error. No constitutional provision or statute requires the specific statements in question to be made to a defendant, and, indeed, it has not been the practice to do so since territorial days.

Let us examine the constitutional provisions and statutes which the majority claim as a sanction for this innovation.

The tenth amendment to the state constitution, upon which the majority rely, provides, *inter alia*:

"In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to

have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed and the right to appeal in all cases:   . . ."

This constitutional provision gives a defendant the right to defend by counsel. It does not require the trial court to invariably and specifically inform a defendant that the court will appoint counsel for him at public expense after he has unequivocally said he did not desire counsel. A defendant is not compelled to defend. He can waive his right to invoke all of the above constitutional provisions and plead guilty if he wants to. The only qualification on such a waiver is that the plea be knowingly and voluntarily made in order to constitute due process of law.

RCW 10.01.110, cited and relied upon in the majority opinion, provides, *inter alia*:

"Whenever a defendant shall be arraigned upon the charge that he has committed any felony, and *shall request the court to appoint counsel* to assist in his defense, and shall by his own oath or such other proof as may be required satisfy the court that he is unable, by reason of poverty, to procure counsel, the court shall appoint counsel, . . ." (Italics mine.)

There is obviously no statutory mandate in this language to inform a defendant who does not want counsel that the court will appoint one at public expense.

RCW 10.40.030, upon which the majority rely, provides:

"If the defendant appear without counsel, he shall be [1] *informed* by the court that it is his right to have counsel before being arraigned, and he shall be [2] *asked* if he desire the aid of counsel, and if it appear that he is unable to employ counsel by reason of poverty, counsel [3] *shall be assigned* to him by the court." (Numerals and italics mine.)

The petitioner appeared without counsel. The court (1) *informed* him that *it was his right to have counsel before being arraigned* in these words: "It is your privilege before entering a plea to have an attorney." He was (2) *asked* if he desired counsel in these words: "You don't want an attorney?" This is the equivalent of "Do you want an attorney?" and satisfies the requirement of the statute that "he shall

be asked if he desires the aid of counsel."

(3) The act of the court in assignment of counsel is contingent upon a defendant's desire for one. The statute contains no provision requiring the court to make any *statement* to him relating to his poverty or the assignment of counsel by the court, if he has already answered the question relating to his desire for an attorney by saying he does not want counsel. Neither does it require the court to ascertain the poverty of a defendant who does not desire counsel and has said so.

The right conferred upon a defendant by the statute *is to have counsel* if he desires one, not to have a discourse upon the subject by the court when he has voluntarily and intelligently waived his right.

The majority opinion follows *In re Wilken v. Squier*, 50 Wn. (2d) 58, 309 P. (2d) 746, instead of the constitution and statutes of this state. The judicial vice in that case is simply that the court did not follow RCW 10.01.110 as quoted above. Instead, it chose to substitute its own language for that of the statute when it said (p. 61):

" . . . In furtherance of this constitutional guarantee, RCW 10.01.110 and 10.40.030 imposes upon the court three duties: (1) to inform the defendant that it is his right to have counsel before being arraigned; (2) to ascertain whether because of the defendant's poverty he is unable to employ counsel, in which event, *the court must inform the defendant that the court shall appoint counsel for the defendant at public expense if he so desires*; (3) to ask whether the defendant desires the aid of counsel." (Italics mine.)

The inaccuracy of the paraphrase of the statute consists of the addition of the italicized language, which is not contained in any statute or constitution.

The statute heretofore quoted verbatim requires the court to make only one statement to the defendant, *i.e.*, "it is his right to have counsel before being arraigned." It requires the court to ask one question, *i.e.*, "if he desire the aid of counsel," and, in the event an affirmative answer to the question is received, to perform one act, *i.e.*, assign counsel if he is a pauper.

The court in *In re Wilken v. Squier, supra*, not only added

a requirement to the statute, *i.e.*, "the court must inform the defendant that the court shall appoint counsel for the defendant at public expense if he so desires," but it made the requirement jurisdictional in nature. The effect of this is that unless the record affirmatively shows that this retroactive court-made requirement has been complied with, the court cannot receive a plea of guilty.

The court arrived at this conclusion in *In re Wilken v. Squier, supra*, by this process of reasoning:

" . . . Merely asking the defendant whether he wants a lawyer does not convey the information that he is entitled to a lawyer at public expense if he is an indigent person, nor does it impress upon him the importance of having legal representation if his rights are to be fully protected. Thus, an indigent defendant's waiver may be made under the mistaken impression that, since he cannot afford to pay a lawyer, he cannot have legal representation."

The instant opinion states the principle in these words:

" . . . The record discloses that the court did not ascertain whether, because of defendant's poverty, he was unable to employ counsel, and that he was not informed of his right to counsel at public expense. *Thus, it is manifest that the defendant was not in possession of such knowledge as would permit him 'intelligently and competently' to waive his right to counsel.* As a result, the defendant was deprived of a right guaranteed to him by Art. I, § 22 (amendment 10) of the state constitution." (Italics mine.)

Thus, the court has built a bare possibility of fact into a conclusive presumption of law and made it determinative of the court's jurisdiction. It is the jurisdictional aspect of the rule with which I am chiefly concerned.

The majority pile presumption upon presumption. The first is that, if the record does not affirmatively show to the contrary, it will be presumed that a defendant was not informed regarding his rights by the court. From this, they then presume that he did not know of his rights from any source, or at all. The presumption process is then completed with the presumption that he would not have pleaded guilty if he had known of his rights. Without any inquiry as to the facts, the plea is then vacated.

Curiously enough *In re Wilken v. Squier, supra,* relies upon and quotes *in extenso* from *Johnson v. Zerbst,* 304 U. S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A. L. R. 357, which is the leading case upon this subject. Since it conflicts with the majority opinion, which purports to follow it, a further quotation from it is permissible.

The facts in that case were that the petitioner had requested counsel from the wrong person, that is, from the United States attorney, instead of the judge. He had not been asked if he wanted counsel, only if he was ready for trial. He went to trial without the aid of counsel, was convicted, and applied for a writ of *habeas corpus.* Upon the question of whether or not he had intelligently waived his right to counsel, the court said (p. 464):

" . . . A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

" . . .

(p. 468) "It must be remembered, however, that a judgment can not be lightly set aside by collateral attack, even on *habeas corpus.* When collaterally attacked, the judgment of a court carries with it a presumption of regularity. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of *habeas corpus,* the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel. If in a *habeas corpus* hearing, he does meet this burden and convinces the court by a preponderance of evidence that he neither had counsel nor properly waived his constitutional right to counsel, it is the duty of the court to grant the writ."

The disposition of this case was that it be remanded to the district court to make findings of fact as to petitioner's knowledge relating to his right to be represented by counsel.

The *Johnson* case conflicts with the majority's theory of presumptions. In that case, the burden of proof was put

upon the petitioner as to the facts, and he was required to satisfy the trial court that he did not competently and intelligently waive his right to counsel. This is in accord with the universal rule of law that there is no burden of proving an adverse party's competency. Where the maintenance of an action hangs upon an issue of mental competency, knowledge of the law, or awareness of one's right, the burden is upon him who denies them. One is never conclusively *presumed*, as a matter of law, not to know the law or one's rights.

The rule of the majority opinion that a defendant cannot knowingly and voluntarily waive any right upon which the record is silent will, of course, require that a statement accompany every plea of guilty showing that the court informed a defendant not only of his constitutional right to defend by counsel, but also of his right to testify in his own behalf, to meet the witnesses face to face, to have compulsory process, and the right to an appeal. All this is necessary in order to overcome the presumption that he did not know about them and would not have pleaded guilty had the court properly enlightened him. These rights are all constitutional and on a par with each other in every way. The same rule must, therefore, apply to each of them. There are no court records in the state which affirmatively set out a complete discourse upon these subjects before the pleas of guilty were entered. They must all be vacated under the majority rule.

I dissent.

WEAVER, C. J., HILL, and OTT, JJ., concur with MALLERY, J.