*In the Matter of the Application for a Writ of Habeas Corpus of* WILLIAM LEE MORGAN, *Petitioner,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.**

*William Lee Morgan,* pro se.

*The Attorney General* and *Lee D. Rickabaugh, Assistant,* for respondent.

PER CURIAM.—On January 2, 1968, in Clallam County, Washington, the petitioner entered a plea of guilty to the offense of unlawful possession of narcotic drugs, a felony. He was sentenced to serve a term of not more than 20 years in a state correctional institution. Thereafter, he filed a petition in this court seeking a writ of habeas corpus, alleging that, in the proceedings leading up to his sentence, he had been denied the right to counsel, that his guilty plea had been coerced, and that he was denied the right of trial by jury. This court, by order, referred the petition to the Su-

*Reported in 470 P.2d 180.

perior Court for Clallam County for an evidentiary hearing as to whether, at the time of his arraignment, plea and sentence, petitioner was indigent and/or whether he knowingly and voluntarily waived his right to counsel.

Pursuant to the order of reference, a hearing was held at which petitioner appeared personally and through court appointed counsel. At the conclusion of the hearing the superior court entered findings of fact to the effect that the petitioner was not indigent at the time of his initial appearance before that court, that he thereafter waived his right to counsel, and that he voluntarily entered his plea of guilty to the offense charged.

The basic facts, by and large, are virtually undisputed.

On or about October 26, 1967, petitioner, a 25-year-old with less than a ninth grade education, was released on parole from confinement in the state reformatory on a prior Clallam County conviction of grand larceny. He returned to Clallam County. At this time he was indebted to a local finance company on a long overdue note amounting to approximately $600. The co-signers of the note, apparently his father and mother-in-law, as well as petitioner, were being pressed for payment. Petitioner was also obligated to make child-support payments. On or about November 1, 1967, he obtained a job in a local mill, where he earned approximately $500 before his arrest in mid-December, which earnings were applied on his obligations, his living expenses and the acquisition of a 1960 Chevrolet worth about $100.

On December 16, 1967, petitioner was arrested on the narcotics charge. His automobile was impounded. He had $102.94 in his possession when he was booked into the county jail. On December 17, 1967, he authorized withdrawal of approximately $90 from his cash on hand for payment of the towage and impound charges on his car and an outstanding grocery bill. He then gave a power of attorney to his mother-in-law authorizing sale of his automobile, the proceeds to apply on the finance company account. Fifty-one dollars from the $90 withdrawal was subsequently returned to petitioner's fund at the county jail. The

car later sold for $100, the proceeds going to petitioner's finance company debt.

On December 18, 1967, petitioner was first brought before the superior court on the narcotics charge. He stated he wished to be represented by an attorney. When asked if he had funds or assets with which to pay an attorney he replied that he did not. The deputy prosecuting attorney then asked about his automobile. Petitioner said he had signed a power of attorney and the car was no longer his. Without further inquiry concerning the make, vintage or value of the automobile or any additional colloquy, the court then peremptorily informed petitioner:

> Well, you'll have to revoke that power of attorney and get the car transferred back into your name, because the court will not appoint an attorney for you under those circumstances.

Petitioner was then returned to the county jail.

Based upon petitioner's statement to the trial judge that he was without assets with which to employ counsel, the prosecuting attorney filed a perjury charge against him. The record indicates also, though not conclusively, that at some stage of the proceedings a reference may have been made to petitioner's susceptibility to an habitual criminal status based upon his prior convictions and the narcotics charge. In this latter vein, the deputy prosecuting attorney testified that if any such discussion took place it did not rise to the dignity of a threat, but rather was interposed in the hope that realization of the seriousness of his course of criminal conduct might tend to keep him out of trouble in the future.

On January 2, 1968, after indicating to the deputy prosecuting attorney that he had not revoked the power of attorney in connection with his automobile and that he was willing to proceed without counsel, the petitioner was again brought before the court. After affirmatively responding to a question from the trial court regarding the prosecuting attorney's assertion that he was willing to proceed without counsel, the petitioner was presented with a prepared form of waiver which he signed. Thereafter, and without further

interrogation by the trial court before or after his plea, the petitioner entered a plea of guilty to the narcotics charge. Arraignment on the perjury charge was deferred, and is still pending. On January 8, 1968, petitioner was sentenced.

We cannot agree with the trial court's conclusion following the evidentiary hearing that at the time of his initial arraignment petitioner was not indigent and that the subsequent waiver of his right to counsel and plea of guilty was free and voluntary.

It has become axiomatic that an indigent accused of crime is entitled upon request to have counsel appointed for him at any critical stage of the proceedings against him, and that a denial of such right breaches his constitutional rights. U.S. Const. amend. 6; Const., art. 1, § 22 (amendment (10); *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963).

■ By statute and by court decision it is made one of the functions of the trial judge before whom an accused is arraigned, to advise him of his right to counsel and, if the accused wishes to be so represented, to fairly and justly ascertain whether the accused is financially able to employ counsel. RCW 10.40.030 and 10.01.110; *Wakefield v. Rhay,* 57 Wn.2d 168, 356 P.2d 596 (1960); *Friedbauer v. State,* 51 Wn.2d 92, 316 P.2d 117 (1957); *Wilken v. Squier,* 50 Wn.2d 58, 309 P.2d 746 (1957).

To qualify for appointed counsel, it is not necessary that an accused person be utterly destitute or totally insolvent. Indigence is a relative term, and must be considered and measured in each case by reference to the need or service to be met or furnished. In connection with the constitutional right to counsel, it properly connotes a state of impoverishment or lack of resources which, when realistically viewed in the light of everyday practicalities, effectually impairs or prevents the employment and retention of competent counsel. *Cf. State v. Rutherford,* 63 Wn.2d 949, 389 P.2d 895 (1964); *O'Connor v. Matzdorff,* 76 Wn.2d 589, 458 P.2d 154 (1969).

In evaluating an accused person's ability to employ counsel, consideration must be given to such factors as the

seriousness of the charge, prevailing and applicable bar association fee schedules, the availability and convertability of any personal or real property owned, outstanding debts and liabilities, the accused's past and present history, earning capacity and living expenses, his credit standing in the community, his family and dependents, and any other circumstances which may impair or enhance the ability to advance or secure such attorney's fees as would ordinarily be required to retain competent counsel. *Cf. State v. Rutherford, supra; O'Connor v. Matzdorff, supra.*

■ Although great weight will ordinarily be attached to the trial court's findings with respect to the question of indigency, yet, where basic constitutional rights are involved, we cannot blindly accept such findings. We are compelled to make our own determination from the record before us whether in fact there has been an invasion of a constitutional right. *Haynes v. Washington,* 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336 (1963); *State v. Hoffman,* 64 Wn.2d 445, 392 P.2d 237 (1964); *State v. Kramer,* 72 Wn.2d 904, 435 P.2d 970 (1967).

In the instant case, all factors being considered, we hold that at the time of petitioner's appearance in court on December 18, 1967, he was indigent in the practical and realistic sense of that term and, upon request, was entitled to have the court appoint counsel for him. The trial court erred in denying petitioner's request.

Turning then to petitioner's subsequent waiver of the right to counsel and the entry of his plea of guilty, we are satisfied that the trial court's summary denial of petitioner's right to counsel, petitioner's apparent inability to furnish bail and his resultant confinement in the county jail, the interposition and pendency of the perjury charge, the possible suggestion of an habitual criminal status, the stresses of his financial plight, and his somewhat cursory arraignment on January 2, 1968, all combined to taint the voluntariness of his then waiver of the right to counsel and his ensuing plea of guilty.

The writ of habeas corpus is granted. Petitioner's conviction and sentence on the narcotics charge is set aside, and

the petitioner is remanded to the Superior Court of Clallam County for further proceedings consistent with the views herein expressed.