[No. 42929.    En Banc.    September 12, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES EVERETT McFARLAND, *Petitioner*.

*Lawrence W. Moore,* for petitioner (appointed counsel for appeal).

*Ronald L. Hendry, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

FINLEY, J.—James E. McFarland was found guilty of unlawful possession of a controlled substance by a Pierce County Superior Court jury. The trial court denied a motion to suppress and admitted certain evidence allegedly tainted under the "fruit of the poisonous tree" doctrine of *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), a derivative of the exclusionary rule created in *Weeks v. United States,* 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341 (1914), and extended to the states in *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961). The Court of Appeals affirmed the verdict of the jury in an unpublished opinion. We granted a petition for review. Herein, we affirm the decision of the Court of Appeals and the trial court.

Prior to the advent of the criminal prosecution in the Superior Court involved in the instant case, petitioner McFarland was involved in a criminal prosecution in the Tacoma Municipal Court in which he pleaded guilty to two traffic counts and was convicted on a third count of assault. It must be conceded that he was not adequately apprised of his right to counsel and was not, in fact, represented by counsel at his trial and conviction on the assault charge in the Tacoma Municipal Court. Furthermore, the municipal court judgment might well have been set aside or voided on appeal, but no such definitive action was or has been taken to date. After his conviction in municipal court, McFarland was sentenced to 90 days in the city jail and ordered committed. Thereupon, before leaving the court room, he gave oral notice of appeal, an appeal bond was set, and McFarland was immediately taken to the city jail. Shortly thereafter at the city jail he was booked and searched. Approximately 20 amphetamine tablets were found on his person. As a result of this, he was charged in the Superior Court in the instant case with unlawful possession of a

controlled substance, and counsel was appointed for him. He pleaded not guilty and, as hereinbefore indicated, moved to suppress the evidence obtained at the city jail as having been acquired during a search incident to a commitment declared unlawful by *Argersinger v. Hamlin,* 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972).

■ The exclusionary rule of *Weeks* and *Mapp* has spawned the so-called "fruit of the poisonous tree" doctrine which requires the suppression of all evidence that is derived as a consequence of an illegal search or seizure.

Commentators agree that the most important social good or purpose of the so-called exclusionary rule, described in the common vernacular, is to "police the police," *i.e.,* to discourage and deter police conduct violative of the Fourth Amendment protection against unreasonable searches and seizures. Thus, in situations where there is no police deterrent effect to be served by exclusion of particular evidence, the United States Supreme Court has steadfastly rejected application of the exclusionary rule. *See, e.g., United States v. Calandra,* 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613 (1974); *Brown v. United States,* 411 U.S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565 (1973); *Alderman v. United States,* 394 U.S. 165, 22 L. Ed. 2d 176, 89 S. Ct. 961 (1969). *Cf. Cardwell v. Lewis,* 417 U.S. 583, 41 L. Ed. 2d 325, 94 S. Ct. 2464 (1974).

■ In our judgment, the instant case does not involve an unwarranted intrusion by the police violative of the "unreasonable search and seizure" provisions of the Fourth Amendment. It does involve a routine and, we daresay, justifiable booking and an administrative search when McFarland arrived at the jail pursuant to a then outstanding Tacoma Municipal Court judgment. Assuming at the present that the Tacoma Municipal Court judgment was not only voidable but void on due process constitutional grounds, *cf. Haislip v. Morris,* 84 Wn.2d 106, 524 P.2d 405 (1974), this has *not,* in fact, depreciated in any way the actual probative value of the 20 amphetamine tablets as evidence. Now, in retrospect, it is claimed that by some

kind of legal alchemy or relation-back theory or, at best, by a dubious collateral attack on the Tacoma Municipal Court judgment, the evidence, *i.e.*, the 20 amphetamine tablets should be labelled verboten—"fruit of the poisonous tree" —and properly subject to McFarland's motion to suppress in the instant case.

By way of summary, it seems to us significant that in the instant case, an independent judicial proceeding in the Tacoma Municipal Court, was followed by the necessary and routine custodial jail search. Hence, there was no police misconduct directly involving an unlawful search and seizure violative of the Fourth Amendment, and thus, the ostensible purpose of the exclusionary rule as embodied in the "fruit of the poisonous tree" doctrine is in no way to be served in the instant case by exclusion of the allegedly tainted evidence, 20 amphetamine tablets found on McFarland's person at the time he was searched and transferred to the custody of the Tacoma city jail. For the reasons indicated, the judgment of the trial court should be affirmed. It is so ordered.

HALE, C.J., and HUNTER, HAMILTON, WRIGHT, and BRACHTENBACH, JJ., concur.

HALE, C.J. (concurring specially)—I join in the opinion but would make further reference to the absurd consequences produced by latter-day judicial thinking on the suppression of sound evidence in criminal cases. In many cases, the rule of suppression sounds the death knell of the State's case for light and transient causes arising out of a minor and sometimes even trifling infraction of a rule of evidence committed by a distant peace officer at a distant place. In this case, I cannot find where any officer committed any error whatever with respect to the arrest and search of the defendant, and the judge's error—if any—was unrelated to the present case.

Defendant accepted the burdens of his guilt in two traffic offenses, freely acknowledging them in open court by his plea of guilty; his guilt in another charge was established

by trial. He now asserts that the claimed errors, based upon a failure of the court to notify him that his right to counsel would be at public expense, occurring in these three cases should be visited upon the State in another wholly separate, distinct and unrelated offense.

From the moment that the defendant entered the courtroom of the municipal court, throughout all stages of his arraignment, trial, sentencing and trip from the courtroom to the jail, he was engaged in the commission of a crime. During that interval, in the presence of the judge, court attachés and peace officers, he was liable to arrest and prosecution for the crime he was then actively engaged in committing—the concealed and unlawful possession on his person of a contraband and illegal drug. And, it is immaterial whether the illegal and concealed object on his person was a deadly weapon, a grenade or bomb, heroin or amphetamine. In any event, the court's failure to appoint counsel in three municipal court cases had no relevance to the proof of guilt in the unlawful possession of drugs case —nor should it operate to immunize the defendant from prosecution for other crimes committed by him in the courthouse during the trial of the very charges which brought him there.

Aside from the doubtful conclusion that it was error to allow the defendant to plead guilty after he had been succinctly advised in writing by the judge that he had both a right to counsel and to a continuance enabling him "to prepare a proper defense or to seek advice," the error should not be deemed transferable to another case involving a separate and distinct crime having no connection whatever with the crimes or the trials in which the error is said to have occurred.

What was strenuously argued here is actually a new theory of jurisprudence—the theory of floating error, fluttering from place to place until it lights on a point where it will do the defendant the most good. Defendant's convictions without counsel in the three municipal court cases, it is argued, were conceived in error notwithstanding that the

defendant, after being advised of his right to counsel at the outset made no claim of indigency and did not request counsel. The record discloses a singular lack of curiosity on defendant's part concerning appointment of counsel at public expense and further discloses no inclination to request counsel until after he had testified in his own behalf. He freely and voluntarily elected both to plead guilty to two charges and to go to trial without counsel on the third.

To be reversible, the claimed error must be proximate to the conviction. Error should not be transferable from one cause to a different and wholly unrelated one; nor should it be judicially expanded to create an immunity from prosecution for other and different crimes tried in other and different cases. This should be specially true of error arising in the trial of an offense committed before, during and after a judicial proceeding not connected with the judicial proceedings in which the error is claimed. Accordingly, it should be stated as a principle that error asserted in the prosecution of one set of crimes is not proximate and cannot be transferred to the prosecution of a wholly separate, distinct and unrelated crime.

There is another reason, however, why a failure to advise of the right to counsel at public expense in the municipal court cases cannot operate as error in the illegal possession of drugs case, and that is the lack of causation. This error cannot be deemed to have contributed to a wrongful conviction, for an attorney in the discharge of his duty to his client ought not participate in the commission or concealment of a crime. Aside from the accidental circumstance that counsel, in the three municipal court cases, might conceivably have persuaded the court to grant probation, or enter a judgment of acquittal in the three cases in which defendant was convicted, thus obviating the lawful search at the jail, the lawyer could not have surreptitiously disposed of the illegal drugs or taken possession of them without becoming particeps criminis. The most that can be made of the court's error in the municipal court cases is that, had counsel been appointed there, circumstances

might have developed so that possession of the drugs would never have been revealed. This possibility does not rise to the concept of legal cause.

That the services of counsel might possibly have enabled the defendant to prevail in municipal court or induce him to demand a continuance and thus conceal his offense, counsel's services would not have prevented the defendant from committing a crime he had already committed and was continually committing but would simply enable him to hide it. And, of course, for the attorney surreptitiously to relieve his client of the contraband so as to protect him from conviction would not only make the attorney participes criminis but would constitute a service neither required of nor reasonably to be expected of counsel. Professional services to a client do not legitimately extend to committing an offense nor concealing the evidence of one.

STAFFORD, J. (dissenting)—I am as greatly concerned as the majority with the critical drug problems that face law enforcement agencies and our courts. Nevertheless the majority's disenchantment with the "exclusionary rule" does not change the fact that it still is part and parcel of the framework of criminal law within which we are required to operate. Further, while the denunciatory remarks of the specially concurring opinion make interesting reading, they add more heat than light and fail to reflect today's law.

Because the majority has chosen to ignore the real problem before the court, I am compelled to dissent. In doing so it is necessary to review all of the facts.

A Superior Court jury found James E. McFarland guilty of unlawful possession of a controlled substance. The Court of Appeals affirmed the verdict in an unpublished opinion. We granted a petition for review.

The evidence used to convict appellant in Superior Court was obtained as the result of a search conducted while he was being booked at the Tacoma city jail pursuant to a municipal court conviction, sentence and commitment. Appellant contends the municipal court conviction, sentence

and commitment were void. Thus, he asserts, the fruits of the booking search, conducted in connection therewith, should have been excluded. He argues that the trial court erred by denying his pretrial motion to suppress the evidence in question.

The testimony and exhibits properly before us reveal that appellant was charged in municipal court with driving without a valid operator's license, driving while his driving privileges were suspended, and with third-degree assault. He appeared in court August 15, 1972. The municipal court clerk handed him a document entitled "RULES, RIGHTS AND PROCEDURES IN THE MUNICIPAL COURT" which contained the following information:

> You have the right to be represented by a lawyer and may have your case continued to a later date in order to prepare a proper defense or to seek advice. You are not, however, required to employ a lawyer, but may defend yourself in court.

Thereafter, on the same day, appellant pleaded guilty to the two traffic charges and not guilty to the charge of assault, whereupon the municipal court proceeded immediately to trial on the assault charge. Appellant was not represented by counsel at any stage of the pretrial, trial or post-trial proceedings, a fact that the State did not deny at the Superior Court hearing on appellant's motion to suppress evidence. Further, the State does not deny that, as appellant left the stand, he informed the municipal judge he had no funds with which to hire an attorney. Finally, the State does not deny the court's failure to inform appellant that, as an indigent, he had the right to have the court appoint a lawyer to represent him at no personal cost.

At the conclusion of the August 15 trial the municipal court judge found appellant guilty of assault, sentenced him to 90 days in the city jail and ordered him committed. Before leaving the courtroom appellant gave oral notice of appeal, an appeal bond was set and appellant was immediately taken to the city jail.

Shortly thereafter, appellant was booked and searched at

the city jail. Approximately 20 amphetamine tablets were found on his person. As a result, he was charged in Superior Court with unlawful possession of a controlled substance.

Based upon indigency, the Superior Court appointed counsel to represent appellant. Appellant pleaded not guilty and moved to suppress the evidence obtained at the city jail as having been acquired during a search incident to a commitment declared unlawful by *Argersinger v. Hamlin,* 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972). The motion was denied. At the subsequent trial, appellant was found guilty as charged.

Appellant contends the trial court erred by denying his motion to suppress the evidence taken from him during the booking search which was made pursuant to an unlawful jail commitment. I must agree.

Prior to *Argersinger,* it was generally assumed that defendants were not entitled to court-appointed counsel in minor or petty criminal cases. The information sheet furnished appellant, August 15, 1972, was consistent with that widely held view. It failed to inform him that if he were an indigent, he would be entitled to a court-appointed lawyer at no personal cost.

*Argersinger* changed that legal misconception. On June 12, 1972, *nearly 2 months prior* to appellant's municipal court trial, the *Argersinger* court said, at page 37:

> We hold, therefore, that *absent a knowing and intelligent waiver, no person may be imprisoned for any offense,* whether classified as petty, misdemeanor, or felony, *unless he was represented by counsel at his trial.*

(Italics mine.) It was made abundantly clear that in criminal cases the right of an indigent defendant to the assistance of counsel is guarantied by the sixth amendment to the United States Constitution, citing *Powell v. Alabama,* 287 U.S. 45, 77 L. Ed. 158, 53 S. Ct. 55, 84 A.L.R. 527 (1932). The Supreme Court further declared that such right was made applicable to the states by the Fourteenth Amend-

ment, citing *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963).

Although both *Powell* and *Gideon* are felony cases, *Argersinger* recognizes, at page 32, that "their rationale has relevance to any criminal trial, where an accused is deprived of his liberty." Both cases indicate one of the fundamental rights applicable to all criminal prosecutions is that of representation by counsel. *See also In re Oliver*, 333 U.S. 257, 92 L. Ed. 682, 68 S. Ct. 499 (1948), in which the penalty was only 60 days imprisonment.

The rationale of *Argersinger* places the fundamental right to representation by counsel within reach of all accused of petty crimes and misdemeanors, as well as those charged with felonies. Thus, the determination basic to a court's *power to imprison a defendant found guilty of any crime* (either petty or felony) *is whether he knowingly waived his fundamental right to representation by counsel*. Preliminary to that determination, however, are two other fundamental issues: (1) whether the defendant must first affirmatively request counsel, or whether the court must inform the defendant of his rights; and (2) whether a knowing and intelligent waiver must be established affirmatively or whether a reviewing court may rely upon an incomplete or silent record and assume waiver.

Both preliminary issues were resolved by *Johnson v. Zerbst*, 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938), and its progeny. In *Zerbst* the United States Supreme Court stated, insofar as pertinent, at pages 464-65:

> It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that *we "do not presume acquiescence in the loss of fundamental rights."* . . .
>
> . . .
>
> The constitutional right of an accused to be represented by counsel invokes, of itself, *the protection of a trial court, in which the accused . . . is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge* of determining whether there is an intelligent and competent waiver

by the accused. While an accused may waive the right to counsel . . . *it would be fitting and appropriate for that determination to appear upon the record.*

(Footnotes omitted. Italics mine.) Thereafter, the principles declared in *Zerbst* were held equally applicable to asserted waivers of the right to counsel in state criminal proceedings. *Rice v. Olson,* 324 U.S. 786, 89 L. Ed 1367, 65 S. Ct. 989 (1954). In the latter case the defendant did not claim to have requested counsel, but alleged that he had not been informed of his right to counsel and thus had not waived the right. The court held, at page 788:

A defendant who pleads guilty is entitled to the benefit of counsel, and *a request for counsel is not necessary.*

(Italics mine.) Finally, the United States Supreme Court said in *Carnley v. Cochran,* 369 U.S. 506, 516, 8 L. Ed. 2d 70, 82 S. Ct. 884 (1962):

*Presuming waiver from a silent record is impermissible. The record must show,* or there must be an allegation and evidence which show, *that an accused was offered counsel* but intelligently and understandingly rejected the offer. Anything less is not waiver.

(Italics mine.) Clearly then, whether the crime is a felony, a misdemeanor or a petty crime, a court has the *duty* to inform a defendant of his right to counsel, which includes the right to court-appointed counsel if he cannot afford to hire his own. Equally clear is the fact that waiver of that fundamental right may not be presumed from a silent record. The record must demonstrate that an accused was offered counsel but intelligently and understandingly rejected it.

The statute and case law of this state has followed a pattern similar to that which preceded *Argersinger,* on the federal level. It has been determined by statute[1] and by

---

[1] At the time appellant appeared in municipal court both RCW 10.40.030 and RCW 10.01.110 were applicable. In July 1973 they were superseded by CrR 3.1, 4.1 and 4.2. The new criminal rules reflect the case law of this court and have somewhat broadened the duties formerly imposed on trial judges by statute. However, indigent defendants

court decision that in felony cases a trial judge must: (1) ascertain whether the defendant is incapable of employing counsel because of his poverty. *Wilken v. Squier,* 50 Wn.2d 58, 309 P.2d 746 (1957); *Wakefield v. Rhay,* 57 Wn.2d 168, 356 P.2d 596 (1960); *Aichele v. Rhay,* 57 Wn.2d 178, 356 P.2d 326 (1960). (2) If the defendant is incapable of employing counsel, the trial judge must fully inform him of his right to have counsel appointed at public expense. *Wilken v. Squier, supra.* (3) The trial judge must ask whether the defendant desires the aid of such counsel according to *Wilken, Wakefield* and *Aichele.* (4) Finally, according to the impact of the foregoing cases, the trial judge is responsible for the record clearly showing that the first three steps have been taken. *See also Morgan v. Rhay,* 78 Wn.2d 116, 470 P.2d 180 (1970).

*Argersinger* has now supplied the rationale necessary to apply the foregoing fundamental principles to cases involving misdemeanors and petty crimes. In fact, *Argersinger* leads us one step beyond. Absent a knowing and intelligent waiver of the above enumerated constitutional rights, *no person may be imprisoned for any offense,* whether classified as petty, misdemeanor or felony, *unless he was represented by counsel at his trial.*[2] As stated in *Argersinger,* at page 33:

> We are by no means convinced that legal and constitutional questions involved in a case *that actually leads to imprisonment even for a brief period* are any less com-

---

have not acquired rights they did not possess formerly. The rights with which we are here concerned are constitutional and the statutory provisions related above merely reflected legislative confirmation thereof. They are not, however, legislatively created. *Wakefield v. Rhay,* 57 Wn.2d 168, 356 P.2d 596 (1960).

[2]*It is of interest to note that CrR 3.1 provides: (a) (1)* "The right to counsel shall extend to *all criminal proceedings* for offenses *punishable by loss of liberty regardless of their denomination* as felonies, misdemeanors or otherwise . . ." (Italics mine.) (c) (1) "he shall . . . be advised of his right to counsel. . . . and it shall be stated expressly that a person who is unable to pay a lawyer is entitled to have one provided without charge."

To the same effect *see* JCrR 2.11(a) and (c)(1).

plex than when a person can be sent off for six months or more.

(Italics mine.)

In the instant case it is clear the municipal court judge failed to provide appellant with the information required by *Argersinger*. In fact, the information furnished him was both incomplete and misleading. Since appellant was not informed of his right to counsel, it cannot be said that he knowingly and intelligently waived that right. An indigent cannot be said to have waived his right to court-appointed counsel if he has not been informed he has such a right. *State v. Tetzlaff*, 75 Wn.2d 649, 652, 453 P.2d 638 (1969). The absence of waiver is particularly evident in the instant case because it apparently was not generally known that a defendant had such a right, if charged with petty crimes and misdemeanors. Further the inadequate information furnished appellant by the municipal court afforded him no opportunity either to request or waive an attorney based upon indigency.

Since appellant was not represented by a lawyer at any stage of the proceeding, the municipal court had no power to imprison him for any period of time, however short, absent a knowing and intelligent waiver of counsel. *Argersinger v. Hamlin, supra* at 33 and 37.[3]

The conviction, sentence and commitment to jail imposed upon appellant were directly contrary to *Argersinger*. The judgment of conviction was pronounced by a court without jurisdiction and thus was *void*. As stated in *Johnson v. Zerbst, supra* at 468:

If the accused . . . is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a *jurisdictional bar to a valid conviction* and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost "in the course of the pro-

---

[3]We need not consider the requirements of the Sixth Amendment as regards the right to counsel where loss of liberty is *not* involved because in the instant case appellant was convicted, sentenced and committed to jail.

ceedings" due to failure to complete the court — as the Sixth Amendment requires — by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. *If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction . . . is void . . .*

(Footnote omitted. Italics mine.) *See also Waley v. Johnston,* 316 U.S. 101, 86 L. Ed. 1302, 62 S. Ct. 964 (1942); *Horn v. Bailie,* 309 F.2d 167 (9th Cir. 1962).

Although the municipal court proceeded under a void conviction, sentence and commitment, the State has suggested that the jailer was still entitled to search him because appellant was lodged in jail. In support of this proposition the State invited this court to consider some purported jail rules contained in its brief, contrary to the rules on appeal and cases on the subject. This improperly injected subject matter should not have been considered.[4] Without question a jailer is authorized to search a person at the time of booking to prevent the smuggling of contraband into jail, but there is a difference between the power to search to protect the integrity of the jail and the right to use the fruits of that search in a subsequent prosecution of the one searched. It is the latter problem that concerns us, *i.e.*, whether the State may use the fruit of a search which stems from a *void* conviction, sentence and commitment.

The evidentiary situation confronting us closely parallels

---

[4]The State's brief contains what purports to be a copy of "jail rules" pertaining to a search of persons booked at the jail. Our review of the record, including the statement of facts, transcript, and exhibits reveals that the so-called "jail rules" were not marked or admitted at any stage of the instant case. Nothing indicates that the trial court even saw or considered them. The "rules" are not properly before us.

Even if they had been admitted during the suppression hearing or the subsequent trial, they are not properly before us. An exhibit may be brought before this court for consideration only in the statement of facts. *See* ROA I-34; ROA I-35; and *Chaffee v. Chaffee,* 19 Wn.2d 607, 145 P.2d 244 (1943); *Lee v. Gorman Packing Corp.,* 154 Wash. 376, 282 P.2d 205 (1929). This was not done. Thus, the material is not properly before us for consideration.

the common search and seizure rule that in the absence of a valid search warrant, seizure of evidence from one's person is justified only if it is substantially contemporaneous with *and incident to a lawful arrest. See Giordenello v. United States*, 357 U.S. 480, 2 L. Ed. 2d 1503, 78 S. Ct. 1245 (1958); *State v. Poe*, 74 Wn.2d 425, 445 P.2d 196 (1968); *State v. Wilson*, 70 Wn.2d 638, 641, 424 P.2d 650 (1967). Even more closely analogous is the unlawful arrest followed by a search of the person in the jail. In *United States v. Di Re*, 332 U.S. 581, 92 L. Ed. 210, 68 S. Ct. 222 (1948), Di Re was arrested, frisked and taken to the police station where he was asked to empty his pockets. Some evidence was obtained. Thereafter, *he was booked and more thoroughly searched at the jail*. The latter search produced evidence which was introduced at trial over defendant's objection. The United States Supreme Court reversed the conviction holding that the arrest was illegal and that a conviction based on evidence obtained under such circumstances could not stand. The high court observed at page 595:

a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success.

(Footnote omitted.)

We should hold that evidence obtained from a person as the result of a search made in the jail at or near the time of booking and at a time substantially contemporaneous with and incident to a *void* conviction, sentence and commitment is subject to a motion to suppress. Evidence that is unlawfully seized should be excluded if a timely motion for its suppression is made. *State v. Biloche*, 66 Wn.2d 325, 327, 402 P.2d 491 (1965); *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961).

Appellant herein made a timely motion to suppress the evidence seized substantially contemporaneous with and incident to the *void* conviction, sentence and commitment. The trial court erred by denying the motion and subsequently admitting the unlawfully seized evidence at trial.

The State, in oral argument and in its brief, contends appellant did not perfect his appeal from the municipal court judgment. This, it is said, resulted in the dismissal thereof. Based upon such asserted dismissal, the State seems to suggest that appellant's attempt to insert the issue of voidness of the conviction, sentence and commitment is not well taken. The thought seems to stem from the idea that a dismissal of the appeal rendered the municipal court judgment and sentence final and valid, thus any attack thereon would be impermissibly collateral in nature.

In support of the above proposition the State's brief includes an appendix composed of what purports to be appellant's notice of appeal from the municipal court, a municipal court notice that the appeal will be dismissed if not timely prosecuted and an order of dismissal and remand purportedly entered by the Superior Court, January 29, 1973. As with the jail rules, improperly submitted for our consideration, we are also invited to consider the incorrectly proffered material that purports to be court records. Once again, we should decline the invitation to go outside the record.[5]

However, even if one assumes appellant's motion to suppress the evidence is a collateral attack on the municipal court conviction, sentence and commitment, it does not follow that the attack is invalid. The rule that a former judgment of conviction may not be collaterally attacked does not apply if the judgment of conviction is *void*. *State v. Dericho*, 107 Wash. 468, 182 P. 597 (1919). A *void* order, judgment or decree is a nullity, as distinguished from one that is merely erroneous, and may be attacked collaterally

---

[5]A review of the record, including the statement of facts, transcript and exhibits reveals that the so-called "exhibits," set forth in the appendix to the State's brief, were not marked or admitted at any stage of the instant proceedings. They are not mentioned in the statement of facts. An exhibit may be brought before us for consideration only in the statement of facts. *See* ROA I-34; ROA I-35; *Chaffee v. Chaffee, supra; Lee v. Gorman Packing Corp., supra.* This was not done. The material contained in the appendix to the State's brief is not properly before us for consideration.

at any time and in any proceeding by the one adversely affected. *Brown v. Brown,* 46 Wn.2d 370, 281 P.2d 850 (1955); *France v. Freeze,* 4 Wn.2d 120, 102 P.2d 687 (1940); *Picardo v. Peck,* 95 Wash. 474, 164 P. 65 (1917); *see also Horn v. Bailie, supra.* Thus, appellant's attack upon the *void* conviction, sentence and commitment, and the resultant booking search is not subject to the collateral attack rule. Appellant properly challenged the *void* conviction, sentence and commitment together with the booking search based thereon.

As indicated earlier, the trial court erred by failing to grant appellant's motion to suppress the evidence obtained as the result of the *void* conviction, sentence and commitment.[6] The trial court should be reversed.

Ordinarily a cause would be remanded for a new trial. In the instant case, however, the evidence subject to the motion to suppress was the only evidence offered in support of the State's case. In the absence of such evidence, the case should be dismissed.

ROSELLINI and UTTER, JJ., concur with STAFFORD, J.

Petition for rehearing denied October 29, 1974.

---

[6]This case does not circumscribe an officer's authority to make a warrantless search and seizure incident to a *lawful* arrest or a warrantless search and seizure during a *lawful* custodial detention subsequent to a *lawful* arrest. These issues are not before us.

At this writing *United States v. Edwards,* 415 U.S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234 (1974) is the latest pronouncement on the subject of warrantless custodial searches and seizures. In *Edwards* the defendant had been *lawfully* arrested and *lawfully* detained at the jail. The Supreme Court held the warrantless search and seizure was not violative of defendant's Fourth Amendment rights although the search and seizure, made during the *lawful* detention, occurred nearly 10 hours subsequent to the *lawful* arrest. In short, *Edwards* was not only based upon a lawful arrest, but upon a subsequent *lawful custodial detention* as well. Unlike *Edwards,* defendant's custodial search and seizure was incident to a *void,* and thus unlawful, commitment. *Edwards* is not in point on the issue before us.