[No. 33186.   Department One.   November 17, 1955.]

THE STATE OF WASHINGTON, *Respondent*, v. BERTINA G. MYERS, *Appellant.*[1]

[1]Reported in 290 P. (2d) 253.

*A. M. Ursich,* for appellant.

*Robert L. Charette* and *James J. Solan,* for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment and sentence entered upon conviction on three separate counts of the crime of offering false evidence.

Ben and Dorothy Ellwanger owned certain cabins located at Pacific Beach which they desired to sell. A listing letter was given to Mrs. Myers, a former school teacher residing in Tacoma, whose husband was a chaplain in the army stationed at McChord Field. As a result of a newspaper advertisement, she was contacted by a Mrs. Thelma Marshall, whose husband, Sylvester, was about to leave the service. The Marshalls were interested, but had no money for the down payment. Mrs. Myers, feeling that the Marshalls were directed to her by God, withdrew $10,000 from a savings account and had a check in that amount made out

to the Ellwangers. The Marshalls executed a note to her in the sum of $2,500, secured by a mortgage on some lots which they owned. They also gave her an unsecured note in the sum of $7,500.

The down payment was made, a conditional contract of sale for the property entered into, and the Marshalls took possession. They were unable to make the payments, either on the contract of purchase with the Ellwangers or on the two notes which they had given to Mrs. Myers. Ultimately, the Marshalls executed a quitclaim deed to the Ellwangers and gave up possession.

While negotiations were pending on a proposed settlement between the parties, Mrs. Myers, in the office of an attorney in Hoquiam, produced three documents. They were, copies of a note payable to Mrs. Myers, an earnest-money receipt, and a mortgage of the Ellwanger property as security, each in the amount of ten thousand dollars, and each containing the purported signatures of Mr. and Mrs. Ellwanger and Mr. and Mrs. Marshall.

A civil action was instituted by the Myers' against the Ellwangers and the Marshalls on these documents, at which Mrs. Myers testified concerning their execution. Thereafter, criminal charges were preferred against Mrs. Myers, arising out of her testimony in the civil suit.

We shall not discuss the evidence in the criminal trial. Suffice to state it was sufficient to warrant the verdict of guilty. We shall concern ourselves with errors claimed to have been committed by the trial court.

After the criminal charges were preferred, Mrs. Myers appeared for arraignment, accompanied by counsel, and entered a plea of not guilty. Just before the time of trial, her counsel moved for a continuance, claiming that his client was psychotic, not capable of properly appreciating her peril, and unable to rationally assist in her own defense. The prosecuting attorney joined in the motion, and on April 30, 1954, the court ordered the matter continued until the October term.

Immediately afterwards, an insanity hearing was held, and she was committed to the Western state hospital. On

May 19, 1954, the superintendent of the hospital certified that she was discharged as fully recovered, and she joined her husband, who was then stationed at Rantoul, Illinois.

Just prior to the trial date in the October term, Mrs. Myers' attorney made two separate motions for continuance, one on the ground of lack of jurisdiction in the court in that there had been no hearing or order that her sanity had been restored, and the other because of her health and due to her lack of co-operation in preparing her defense.

During the argument on the question of jurisdiction, the original court file covering the insanity matter was produced. The trial court took judicial notice of the fact that the insanity file contained a certificate of discharge as recovered, signed by the superintendent of the hospital. Counsel for the defendant, in arguing the motion, recognized the existence of the certificate in the insanity file.

RCW 71.02.610 provides:

"Whenever in the judgment of the superintendent of any state hospital, any patient shall have so far recovered as to make it safe for such patient and for the public to allow him to be at large, the superintendent may parole such patient and allow him to leave such hospital, and whenever in the judgment of the superintendent any patient has been restored to his mental health and is probably free from danger of relapse or recurrence of mental illness, the superintendent shall discharge such patient from the hospital. . . ."

We recognized in *In re Pfeiffer*, 10 Wn. (2d) 703, 118 P. (2d) 158, and *Soderquist v. Keller*, 21 Wn. 1, 149 P. (2d) 528, in discussing a similar statute, that it was the only statute which authorized a determination of whether or not a person has become sane after commitment. In the *Pfeiffer* case, we held that a court of equity has inherent power independent of statute to enter an order discharging a person as sane who had theretofore been committed to an institution, and that such order could be based upon a *certificate from the superintendent.*

In *Swak v. Department of Labor & Industries*, 40 Wn. (2d) 51, 240 P. (2d) 560, we held that a court of this state

844

may take judicial notice of the record in the cause presently before it or in proceedings engrafted, ancillary, or supplementary to it. We also held in that case that courts cannot, while trying one cause, take judicial notice of records of other independent and separate judicial proceedings, even though they may be between the same parties, and that in such situations, the record, though public, must be proved.

■■ Here we have a judge to whom a motion for continuance in a criminal action was made on the ground that the defendant was psychotic. He granted the motion for continuance and immediately proceeded with an insanity hearing, which resulted in his ordering the defendant committed to an institution. Now, in the same criminal action, he is confronted with another motion for continuance on the ground that he lacks jurisdiction because the defendant has not been discharged as sane. Surely, in ruling on the motion, he can take judicial notice of the file of an insanity proceeding heard before him, and arising out of this same criminal action. Contained in that file was a certificate of discharge as recovered, signed by the superintendent, which was sufficient to rebut the presumption of continuing insanity.

Our attention has been called to two recent *habeas corpus* cases: *In re Kenstrip v. Cranor*, 39 Wn. (2d) 403, 235 P. (2d) 467, and *In re Varner v. Cranor*, 42 Wn. (2d) 860, 259 P. (2d) 417. In each of these cases, the accused had been committed to an institution as insane and had never been released as cured either by order of court or by certificate of the superintendent. In each case, the defendant was arraigned on a criminal charge and, without counsel, entered a plea of guilty. We held that, when one who has been adjudged insane is charged with the commission of a crime, the presumption of the continuation of his insanity requires the appointment of an attorney as next friend and counsel prior to arraignment, to make that step in criminal procedure accord with due process of law.

■ Here appellant was represented by counsel. The trial court under the facts of this case had jurisdiction to hear the criminal charges preferred against her. Further-

more, when denying the motion, the court gave counsel an opportunity to amend the plea by adding the additional defense of not guilty by reason of insanity, thus raising a jury question. No amendment of the plea was made.

As to the second motion for continuance, before ruling thereon, the court appointed a physician to examine appellant. After the examination, the physician testified that appellant was physically able to go to trial. The court was also of the opinion that, in view of the civil action in which appellant had previously testified, plus the additional time granted from April until October, there was no reason why a defense could not have been prepared. We find no abuse of discretion by the trial court in denying this motion for continuance. See *State v. Pierce,* 175 Wash. 523, 27 P. (2d) 1087.

Error is assigned because of the refusal of the court to permit inquiry by appellant during cross-examination into the consideration given to the Marshalls by the Ellwangers in exchange for the quitclaim deed. Appellant asserts that the credibility of the witness was at issue. The matter was immaterial and the inquiry collateral. A witness cannot be impeached by showing the falsity of his testimony concerning facts collateral to the issue. *State v. Nolon,* 129 Wash. 284, 224 Pac. 932. Furthermore, no offer of proof was made to advise the court of the purpose of the question. See *Sutton v. Mathews,* 41 Wn. (2d) 64, 247 P. (2d) 556.

Handwriting samples were prepared and given to an expert by the Marshalls and Ellwangers for the purposes of comparison. These samples were introduced in evidence. It is not clear in the record whether the samples were given in connection with the criminal charge or with the prior civil action. The rule against permitting such specimens of handwriting is stated in 20 Am. Jur. 623, Evidence, § 746:

"A signature or specimen writing that is made for the occasion and post litem motam may not be used for comparison by the party making it. It is only when a writing is written, not by design, but unconstrainedly and in the natural manner of the writer so as to bear the impress of

the general character of his chirography as the involuntary and unconscious result of constitution, habit, or other permanent cause that it furnishes, if otherwise admissible in evidence, any satisfactory test of genuineness."

The reason for the rule is obvious. Ben Ellwanger, in identifying exhibit 12 as a sample of his handwriting, testified:

"It was sent to me to be filled out for a handwriting expert and I will say that the writing was all done under severe pressure. Anytime you know your writing is going to be examined in a case like this it is bound to be under pressure."

■ An occasion may arise where no specimen of a person's handwriting is available for comparison. In such a situation we believe that it would be permissible to admit in evidence a specimen of handwriting prepared for the occasion. Such a practice should be used sparingly, however, and under proper instructions to the jury, advising it what weight to give to such evidence.

■ In the instant case, it was error to admit in evidence the samples of handwriting complained of. However, such error was not prejudicial because such samples were not used by the expert in giving his testimony. In his demonstration to the jury, he compared the signatures on the questioned documents with signatures on other business documents and letters which had been signed prior to the controversy.

We have considered the other assignments of error, but do not discuss them because we feel that they are without merit.

The judgment and sentence is affirmed.

HAMLEY, C. J., DONWORTH, FINLEY, and OTT., JJ., concur.