[No. 35495.   *En Banc.*   February 2, 1961.]

*In the Matter of the Application for a Writ of Habeas Corpus of* JOHN HERBERT BONNER, *Appellant,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.*[1]

*Wayne W. Wright* and *Alan L. Froelich,* for appellant.

*The Attorney General* and *Stephen C. Way, Assistant,* for respondent.

MALLERY, J.—The petitioner has appealed to this court from an adverse ruling in a *habeas corpus* proceeding in the Superior Court for Walla Walla County.

The background of this proceeding is that he was sentenced in King county to be hanged for first degree murder. In his direct appeal to this court from that sentence, he made the same assignments of error that are repeated in the instant *habeas corpus* appeal. He only contends now that the denial to him of due process of law under the federal constitution was not *specifically* asserted in his

[1]Reported in 359 P. (2d) 157.

trial appeal. A specific ruling on this question is a prerequisite to his invoking the interposition of the federal courts in his behalf. He could have obtained this ruling in his trial appeal and should have done so. He now belatedly seeks a ruling of this court in a *habeas corpus* proceeding upon the question of federal due process. The federal courts permit him to do so, and we are in no position to resist.

A bare denial of the writ of *habeas corpus* by the superior court with an affirmance by us is a sufficient ruling for his purpose, but we think it is necessary to define the position of the state of Washington in this matter for the consideration of the federal courts.

The original appeal from his conviction of first degree murder was heard by this court *en banc* and was unanimously affirmed. The opinion is reported in *State v. Bonner*, 53 Wn. (2d) 573, 335 P. (2d) 462. By reference it is incorporated in this opinion in its entirety. In the light of the background thus made available, it is necessary to discuss only the facts and issues pertinent to the question of federal due process.

We concede that federal due process applies to trials of the criminally insane, but we suggest to the federal courts that the policy as to punishment of insane persons is exclusively for the state to determine. The state of Washington has done so, and, moreover, it subjected its policy to all reasonable requirements of federal due process.

The legislature of this state has elected, in the exercise of its sovereign powers, to deal with the mental deficiencies of persons in their civil and criminal aspects in two separate and unrelated acts. They are "An Act relating to the hospitalization of the mentally ill," Laws of 1951, chapter 139, p. 340, as amended, which we shall refer to as the *civil* act, and "An Act relating to the criminal insane," Laws of 1907, chapter 30, p. 33.

Under the provisions of the *civil* act, the appellant had been adjudicated a "mentally ill" person by the Superior Court of Pierce County and was committed to the Western State Hospital on June 3, 1957. He was paroled by the

superintendent on August 10, 1957, and, on October 15, 1957, shot and killed his ex-wife.

The statutory definition of a "mentally ill" person is contained in RCW 71.02.010, which reads, *inter alia*:

"As used in this chapter, the following terms shall have the following meanings:

" 'Mentally ill person' shall mean any person found to be suffering from psychosis or other disease impairing his mental health, and the symptoms of such disease are of a suicidal, homicidal, or incendiary nature, or of such nature which would render such person dangerous to his own life or to the lives or property of others. . . ."

It is necessary to note that this definition makes no reference to the ability of a person to distinguish between right and wrong, which is the test of criminal responsibility in this state. *State v. Maish*, 29 Wn. (2d) 52, 185 P. (2d) 486, 173 A. L. R. 382. The *omission* of such a reference was deliberate on the part of the legislature because it specifically provided that:

"Nothing in this chapter shall be construed as affecting the laws of this state relating to the criminally insane . . . ." RCW 71.02.020.

■ Accordingly, the appellant's adjudication as a "mentally ill" person under the *civil* act did not relieve him of responsibility for his crime, or make him immune to prosecution for it under the provisions of the "criminal insane" act. Quite to the contrary, the inapplicability of the *civil* act to persons charged with crime is provided for in the *civil* act itself. The legislature intended the "criminal insane" act to be exclusive as to persons charged with crime so far as their mentality was concerned.

The fact is that the appellant did not *avail* himself of any of the adequate provisions relating to due process in the "criminal insane" act of this state. His position at the trial, upon his trial appeal, and again in this *habeas corpus* appeal is simply that he has a right to invoke the provisions of the *civil* act in his *criminal prosecution*.

Accordingly, he contended that the trial court had no jurisdiction to proceed with his criminal trial because of

his *civil* adjudication of being a "mentally ill" person. When the trial court denied his motion to revoke his parole, return him to the civilian custody of the Western State Hospital, and stay his criminal trial until he should be found to be cured by the superintendent of that institution, he persisted in his theory and declined all invitations to have recourse to the "criminal insane" act. He pleaded *not guilty,* rather than *not guilty by reason of insanity.* The trial court, notwithstanding this plea and his knowing waiver of his right to invoke the provisions of the "criminal insane" act on his own behalf, nevertheless, before proceeding, procured expert psychiatric evidence in the absence of the jury as to his understanding of his peril and ability to assist in his own defense. The trial court was not required to do this, although under the circumstances, it was entirely proper.

█ Under the provisions of the "criminal insane" act, the appellant could have entered a plea of not guilty by reason of insanity. This would have made an issue of fact upon which he could make any showing he desired as to his mental condition at any relevant time.

The *availability* of such a remedy constitutes due process under both the state and federal constitutions. This must be so for the inescapable reason that a defendant, especially one with counsel, has a right to conduct his own defense. The state cannot guide or control a defendant in this regard. If the state interposed a plea of not guilty by reason of insanity against a defendant's will, it might so adversely affect the jury's appraisal of a defendant's testimonial knowledge and credibility as to effectively deprive him of a fair trial in the event his defense to the charge was that he did not commit the crime. A defendant has a right to make such a defense rather than seek avoidance of moral culpability by reason of insanity if he desires to do so. A defendant could understandably prefer an acquittal to incarceration in a criminally insane ward.

The appellant elected to plead not guilty instead of not guilty by reason of insanity, and contented himself as to his mental condition with moving against the jurisdiction

of the trial court and for a remand to the custody of the Western State Hospital. He cannot now complain because he was permitted to plead not guilty. The trial court could not prohibit his waiver of his rights under the "criminal insane" act. He has had due process of law.

The judgment of the lower court is affirmed.

FINLEY, C. J., DONWORTH, WEAVER, ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur.

HILL, J., did not participate.

FOSTER, J. (concurring) — While I join in the court's opinion, I have re-examined the issues herein because three days after oral argument in this case the United States Court of Appeals (10th circuit) decided *Fitts v. United States*, 284 F. (2d) 108.

One month after Fitts was alleged to have committed the crime charged, he was adjudged "mentally ill" and committed to a state hospital by a state court. On his trial for the federal offense, no evidence was offered by either side on the question of his insanity. The court said that the presumption of sanity is a rule of law which stands in the place of evidence if there is none. The court commented:

" . . . While a diagnosis of mental illness, even necessitating confinement in a mental institution, may not have the probative effect of providing mental irresponsibility by whatever test may be applied—whether Durham or McNaghten—at the same time, no one can doubt that confinement in a mental institution upon an adjudication of mental illness is sufficient to generate in the minds of all of us a doubt sufficient to provoke inquiry. . . ."

The court held:

" . . .

"Viewed in this light, it becomes reasonably clear that a diagnosis of mental illness necessitating commitment to a mental institution a little more than a month after the commission of the crime, is legally sufficient to raise the issue of mental capacity to commit the offense. In any event, we hold that the proof was sufficient to dissipate the presumption of sanity and to inject the issue of insanity as an element of the offense charged. In the absence of com-

petent evidence of criminal responsibility, the accused was entitled to a directed verdict of acquittal. . . . ."

The record presented to us herein may be distinguished by our decision in *State v. Myers,* 47 Wn. (2d) 840, 290 P. (2d) 253, in which we said:

" . . . Contained in that file was a certificate of discharge as recovered, signed by the superintendent, which was sufficient to rebut the presumption of continuing insanity."

While Bonner was only paroled and Myers was discharged by the superintendent, we think the distinction is not important because the superintendent in each instance acted under RCW 72.23.140 (formerly RCW 71.02.610), which provides as follows:

"Whenever in the judgment of the superintendent of any state hospital, any patient shall have so far recovered as to make it safe for such patient and for the public to allow him to be at large, the superintendent may parole such patient and allow him to leave such hospital, and whenever in the judgment of the superintendent any patient has been restored his mental health and is probably free from danger of relapse or recurrence of mental illness, the superintendent shall discharge such patient from the hospital. . . ."