[No. 1950-2.    Division Two.    November 23, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. DON R. SMITH, *Appellant*.

*Edmund E. Lozier*, for appellant (appointed counsel for appeal).

*Donald F. Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

PEARSON, J.—Defendant, Don R. Smith, a former attorney, appeals his conviction by a Pierce County jury on two counts of grand larceny by misappropriation of funds. (RCW 9.54.010.) The amended information charged defendant in count 1 with misappropriating over $1,000 of funds entrusted to him as attorney and guardian for Edward W. Flannery, and in count 2 with misappropriating over $10,000 of funds entrusted to him as attorney and guardian for David L. Butler.

Defendant's major assignments of error concern a ruling by the trial court refusing to suppress evidence obtained as a result of execution of two search warrants. The warrants were issued by Superior Court Judge Allan R. Billett, one authorizing the search of defendant's office, and the other the search of defendant's home.[1] The claim is that Judge Billett was not a "neutral and detached" magistrate because the affidavit for the warrants contained allegations that fraudulent court orders were used to misappropriate funds from the guardianship accounts. One of the orders attached to the affidavit contained the typewritten name of Judge Billett.[2] The affidavit also stated that a search of the superior court clerk's files did not disclose original signed orders authorizing withdrawal of the funds from the accounts in question. Judge Billett later testified at trial as a witness for the State concerning the bogus court orders.

The issue is whether the exclusionary rule should be invoked because the issuing judicial officer is aware from the affidavit for search warrant that he may be a witness against the defendant whose premises are sought to be searched. We affirm the ruling denying the motion to suppress.

---

[1] The home search was sought when a search of defendant's office failed to disclose the two guardianship files and the canceled checks from those accounts.

[2] The other order contained a clerk's office stamp of the name of Judge William F. LeVeque.

Historically, the Fourth Amendment was a reaction to the evils of the use of the general warrant in England and the writs of assistance in the Colonies. *Boyd v. United States*, 116 U.S. 616, 630, 29 L. Ed. 746, 6 S. Ct. 524 (1886). The thrust of the Fourth Amendment's requirement for a neutral and detached magistrate as the issuing agency for search warrants was authoritatively addressed in *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). There a government enforcement agent who was the chief investigator and prosecutor in the case, acting as a justice of the peace, issued the warrant to search defendant's automobile. In striking down the search warrant, the court noted at page 450 "[T]hat prosecutors and policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations—the 'competitive enterprise' that must rightly engage their single-minded attention." (Footnote omitted.)

■ The rationale underlying the requirement that search warrants be issued by neutral and detached magistrates is stated to be the protection of the right of privacy from overzealous police officers. The judicial officer will more objectively balance the interests of privacy against the interests of criminal investigations than will the investigating police officer, who might distort the independent judgment of probable cause required by the Fourth Amendment. *Johnson v. United States*, 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367 (1948); *Shadwick v. Tampa*, 407 U.S. 345, 32 L. Ed. 2d 783, 92 S. Ct. 2119 (1972). The solution compelled by the Fourth Amendment, as interpreted by the United States Supreme Court, is to interpose a judicial officer's determination of probable cause between the right of privacy and the unbridled discretion of the police to search.

The exclusionary rule which defendant seeks to invoke was designed as an administrative procedure to deter police conduct that violates the Fourth Amendment. "Thus, in situations where there is no police deterrent effect to be served by exclusion of particular evidence, the United

States Supreme Court has steadfastly rejected application of the exclusionary rule." *State v. McFarland,* 84 Wn.2d 391, 393, 526 P.2d 361 (1974).

■ In the instant case, Judge Billett's function was totally divorced from the investigative or police function. The information submitted to him by affidavit was sufficient to meet the constitutional requirement of probable cause. Any judicial officer would have been justified in issuing the warrants. Police deterrence is simply not involved and the underlying purposes of the Fourth Amendment would not be advanced by invoking the exclusionary rule. *State v. McFarland, supra; see Stone v. Powell,* 428 U.S. 465, 49 L. Ed. 2d 1067, 96 S. Ct. 3037 (1976).

Defendant also challenges the contents of the affidavits in support of the warrants as insufficient to establish probable cause. Our review of the affidavits with the attachments demonstrates that this challenge is frivolous.[3] Likewise, the contention that the scope of the warrants was constitutionally overbroad is without merit. The warrants both sanctioned a search for documents, canceled checks, bank statements, and correspondence pertaining to the guardianship accounts in question. When the files were not located at defendant's law office, and the second affidavit established that defendant infrequently visited that office and had no other business office in the county, the affidavits established probable cause to authorize search of defendant's home for the missing guardianship records.

Defendant's second assignment of error relates to an order of the court requiring him to furnish handwriting exemplars in the form of the checks written on the guardianship accounts. A handwriting expert used these exemplars to compare with canceled checks drawn on the guardianship bank accounts. The expert concluded that defendant had in fact written the checks in question.

Defendant contends that the court's order compelling him to furnish handwriting exemplars in the form of the

---

[3]This challenge is made by defendant in his pro se brief and was not asserted by court appointed counsel.

unauthorized checks was a form of testimonial compulsion in violation of his Fifth Amendment privilege against self-incrimination. *Boyd v. United States, supra; Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966).

The United States Supreme Court has accepted with some reservations not applicable here the distinction between compelling an accused to produce evidence of a testimonial or communicative nature on the one hand, and compelling him to produce "physical" evidence on the other. The former is condemned as violative of the accused's privilege against self-incrimination, while the latter is generally not. *Schmerber v. California, supra; State v. West,* 70 Wn.2d 751, 424 P.2d 1014 (1967).

The overwhelming weight of authority is that providing handwriting exemplars is not testimonial or communicative in nature, and the Washington Supreme Court has adopted the same view with respect to voluntary exemplars of an accused's signature. *State v. Craig,* 67 Wn.2d 77, 406 P.2d 599 (1965); *Schmerber v. California, supra; Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967).

Defendant relies upon dictum in *State v. McCormack,* 3 Wn. App. 997, 999, 478 P.2d 756 (1970) to the effect that a defendant "cannot be compelled" to provide a sample of his handwriting. But that case cites no authority for the dictum and the specific issue was not before the court. *State v. Craig, supra,* and the other cases cited above establish the nature of handwriting exemplars as nontestimonial.

However, even assuming that simple signature exemplars may not be testimonial in nature, defendant contends that compulsion to produce an exemplar in the form of the subject matter of the criminal offense takes the exemplar out of the realm of physical or real evidence and casts it with an aura of self-incriminating testimonial evidence. *United States v. Green,* 282 F. Supp. 373 (S.D. Ind. 1968).

There appears to be little logic to this position. In *State v. West, supra* at 753, the Supreme Court stated:

*Schmerber* concludes that although the idea has been

expressed in many different ways, most federal and state courts agree that the privilege against self-incrimination offers no protection against compulsion to submit to "fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to *stand, to assume a stance*, to *walk*, or to make a particular gesture."

These compulsions may all be incriminating or they may provide evidence of innocence. Handwriting, like fingerprinting, has scientifically established distinctive characteristics which can provide real as distinguished from testimonial proof of guilt or innocence. To contend that the expert who makes comparisons of handwriting may have the signature but no more is akin to arguing that one fingerprint is permissible, but not more, or that an accused may be compelled to exhibit a part but not all of his body in a lineup. If the scientific evidence can be made more reliable by a detailed handwriting exemplar, the interests of ascertaining the truth are enhanced; similarly, if the fingerprint expert is allowed a full set of prints with which to make his scientific comparison, the evidence will be more reliable.

It is a non sequitur to allow the jury to consider a less reliable expert opinion simply because the more reliable evidence may prove to be more incriminating.

It is our conclusion that a handwriting exemplar does not become testimonial where the form required approximates that of the offending instrument. *United States v. Doe*, 405 F.2d 436 (2d Cir. 1968).

Defendant also challenges the use of his handwriting exemplars, citing *State v. Myers*, 47 Wn.2d 840, 290 P.2d 253 (1955) and its dictum to the effect that a writing specimen is not reliable and may not be used when the writing " 'is made for the occasion and post litem motam' ".

■ Were that the rule, the use of handwriting exemplars would be severely restricted, if not eliminated. In light of *State v. Craig, supra*, it is doubtful the dictum in *Myers* would be followed. Furthermore, *Myers* relied upon a statement of the rule pertaining to the admission of a

self-serving specimen offered by the one seeking the benefit of the handwriting comparison.[4] In the instant case, any discrepancy in the specimen caused by the "occasion" would work to defendant's, rather than the State's benefit, and no prejudice would result from the fact the specimen was furnished under the emotions of a pending criminal trial.

Defendant also attacks the exemplars as an infringement upon his Fourth Amendment rights to be free of unreasonable searches and seizures. The thrust of this argument is that no showing was made by the State for the need of the exemplars since "myriad samples" were readily available to the State. *State v. Boehme*, 71 Wn.2d 621, 430 P.2d 527 (1967). Consequently defendant contends the court's order was an unreasonable seizure of physical evidence violative of the Fourth Amendment. Again, this is no occasion where the exclusionary rule should be invoked. *See State v. McFarland*, 84 Wn.2d 391, 526 P.2d 361 (1974). Furthermore, assuming arguendo that other specimens of defendant's handwriting were readily available, we fail to see what prejudice there was in allowing use of the exemplars in question.

Defendant's third assignment of error relates to a ruling by the trial court allowing the State to amend count 2 of the information and the refusal of the court to grant a continuance of the trial to allow defendant's counsel to prepare for the amendment. The amendment was allowed at the omnibus hearing 10 days prior to the scheduled trial. The amendment extended the period in which the alleged misappropriations from one guardianship account had occurred. The original information on count 2 charged de-

---

[4]The court in *Myers* took the rule from 20 Am. Jur. *Evidence* § 746, at 623 (1939):

"A signature or specimen writing that is made for the occasion and post litem motam may not be used for comparison *by the party making it*. It is only when a writing is written, not by design, but unconstrainedly and in the natural manner of the writer . . . that it furnishes . . . any satisfactory test of genuineness."

(Italics ours.) *State v. Myers*, 47 Wn.2d 840, 845-46, 290 P.2d 253 (1955).

fendant with misappropriating from the account between June 15, 1973, through April 4, 1974. The amendment specified that the misappropriations under count 2 occurred between June 15, 1973, and August 26, 1974.

Our review of the record persuades us that neither ruling amounted to an abuse of discretion under CR 15(a). The time remaining prior to trial afforded ample time to prepare for the type of amendment allowed.

Next, defendant assigns as error certain evidentiary rulings as follows:

(1) Over defendant's objection the court admitted exhibit 4, which was an abstract of the Flannery Guardianship account No. 18383 prepared by a bank employee who did not testify. However, a vice-president of the American Federal Savings and Loan Association testified that raw data from which the exhibit was prepared was taken from computer printouts which were made in the normal course of business and under his general supervision. The employee who prepared exhibit 4 was required to examine the computer printouts individually and include on the exhibit only those items pertaining to account No. 18383. The employee who prepared exhibit 4 did so under the supervision of the bank officer witness, although the latter did not personally verify its accuracy.

Defendant's convoluted challenge to this exhibit has been authoritatively answered by a series of cases. The vice-president of the American Federal Savings and Loan Association who supervised the preparation and recording of records at the bank was sufficiently qualified and laid a proper foundation for the admission of exhibit 4 and its underlying computer data. His testimony was sufficient to qualify the computer printouts as business records under RCW 5.45.020 within the requirements of *Seattle v. Heath*, 10 Wn. App. 949, 520 P.2d 1392 (1974); *see In re Estate of Walker*, 10 Wn. App. 925, 521 P.2d 43 (1974); 11 A.L.R.3d 1368 (1967). The witness testified that his institution's business "depends" upon computer printouts.

Furthermore, summaries of books and records which are

themselves admissible as business records are likewise admissible when the original documents are so numerous or the information contained in them is so intricate, as in a misappropriation charge, that it would be impractical to have the jury examine the originals and extrapolate the relevant information. *Lamphiear v. Skagit Corp.*, 6 Wn. App. 350, 493 P.2d 1018 (1972); *McCartney v. Old Line Life Ins. Co.*, 3 Wn. App. 92, 472 P.2d 581 (1970); 4 J. Wigmore, *Evidence in Trials at Common Law* § 1230 (Chadbourn rev. ed. 1972).

Nor is it necessary to call as a witness the person who prepared the record or to show that the preparer is unavailable to testify, so long as the record is produced by a custodian and identified by one who has supervised its creation. *Cantrill v. American Mail Line, Ltd.*, 42 Wn.2d 590, 257 P.2d 179 (1953); *State v. Kreck*, 86 Wn.2d 112, 542 P.2d 782 (1975). It is also clear that the constitutional right of confrontation does not apply to business records evidence properly admissible under RCW 5.45.020. *State v. Kreck, supra*.

(2) Various other copies of bank records were also admitted over defendant's objection. Our review of the testimony in regard to these documents persuades us that these records qualified for admission as business records under RCW 5.45.020 and the copies qualified for admission under the Uniform Photographic Copies of Business and Public Records as Evidence Act, RCW 5.46.010. We find no abuse of discretion in the admission of any of the challenged exhibits.

Finally, defendant in a special pro se brief raises objections to certain instructions given or refused. We find these objections patently frivolous. The jury was instructed fairly with respect to both counts.

We conclude that substantial evidence supports the jury verdict and that defendant received a fair trial.

Judgment affirmed.

PETRIE, C.J., and REED, J., concur.

Petition for rehearing denied January 5, 1977.

Review denied by Supreme Court May 25, 1977.