# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In re the Marriage of | No. 47789-1-II |
| BUCK LYLE THOMPSON, | |
| Respondent, | |
| v. | |
| KATIE ANN HOLT fka ACKERLUND, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Katie Holt appeals the trial court's order modifying the parenting plan and placing primary custody of her children, T.L.T., K.A.T., and C.W.T. with their father, Buck Thompson. We hold that the trial court (1) did not abuse its discretion in admitting the challenged exhibits and its erroneous admission of hearsay testimony was harmless; (2) did not err in concluding that Holt's home was a detrimental environment; and (3) did not abuse its discretion by declining to follow the guardian ad litem's (GAL) recommendations. Accordingly, we affirm.

## FACTS

In 2011, Thompson and Holt divorced.[1] Thompson and Holt shared custody of their children, T.L.T., K.A.T., and C.W.T.,[2] with the children spending 60 percent of their residential time with Holt and 40 percent of their residential time with Thompson.

---

[1] After her divorce from Thompson, Holt remarried and changed her last name.

[2] To protect the children's privacy, we use their initials in place of their names.

In June 2013, Thompson picked up the children from Holt. Near the end of June, the children told Thompson and his new wife, Brandy, about physical and emotional abuse they suffered while with Holt. Thompson enrolled the children in counseling with Colleen Hicks, and later with the U.S. Army's Chaplain Counseling Services under the supervision of Chaplain Fry. The children made various disclosures about abuse to both Hicks and the counselors at Chaplain Counseling Services. Hicks concluded that the children were not coached in making the disclosures. Records from Chaplain Counseling Services also suggested that the children were not coached.

In December 2013, the children also told Thompson and Brandy about sexual abuse they suffered while with Holt. Thompson reported the disclosures to his first sergeant, and the U.S. Army Criminal Investigation Division (CID) launched an investigation. The investigation concluded that the allegations against Holt were unfounded and that the children had been coached.

On February 28, 2014, Thompson petitioned to modify the parenting plan and receive primary custody of the children. He asserted that a substantial change in circumstances had occurred and that the current plan placed the children in a detrimental environment. The children remained with Thompson and had no contact with Holt since June 2013.

The trial court appointed Christine Kerns as the GAL on February 12, 2015. Her April 19, 2015 preliminary report detailed her interviews with the children and both parents and included the disclosures of physical and sexual abuse made by the children.[3] The GAL's preliminary report made recommendations regarding psychological evaluations for the parents, counseling for the

---

[3] The GAL's preliminary report included K.A.T.'s disclosure that "her mom touched her in inappropriate places and so did [her uncle]." CP (Sealed) at 9.

children, and how the parents should behave around the children, but it did not make any recommendations regarding custody. The GAL e-mailed her final recommendation the weekend before the scheduled trial date. The GAL's final recommendation included counseling for the children and that they be returned to Holt full time with Holt as the primary parent.

The case was tried on May 4, 2015. At trial, the GAL testified that she believed the children had been coached to make the allegations of abuse. The GAL also testified that she had forensic interviewing training, and as a result of her investigation, she believed the children were coached. The GAL further testified that in addition to the children and parents, she spoke to Hicks, who believed the children's disclosures were truthful and not coached, and the CID investigator, who believed the children were coached. The GAL gave more weight to the CID's findings due to the amount of collateral information in its investigation.

Thompson and Brandy testified about the children's poor physical condition when they picked them up from Holt. Thompson testified that T.L.T. was in "shorts that didn't fit, [and] dirty. His shoes were falling apart, [and] dirty. [And h]e didn't have the bottom soles [on his shoes]." 1 Verbatim Report of Proceedings (VRP) at 42. C.W.T. "had flip flops, no shoes, dirty shorts, [and a] dirty shirt." 1 VRP at 43. Brandy testified that K.A.T. "had on a short skirt that showed her bottom, and a tied up, like, tight shirt." 1 VRP at 76-77.

Thompson and Brandy also testified that the children disclosed suffering physical, emotional, and sexual abuse while with Holt. Specifically, Thompson and Brandy testified about T.L.T.'s disclosure that "if [he] did not break [Thompson and Brandy] up, [that he] would get beat" when he returned to Holt. 1 VRP at 79. Brandy also testified about K.A.T.'s disclosures about abusive hair brushing and inappropriate touching while with Holt. Holt made a hearsay

objection each time Thompson and Brandy testified about what the children said about the abuse. The trial court overruled the hearsay objections and stated that it "want[ed] to hear how the issue was disclosed by the child" and wanted to try "to get an understanding of what's happening from each witness's perspective." 1 VRP at 50, 80.

Thompson sought to admit records from Chaplain Counseling Services, which were marked exhibits 1-10.[4] Chaplain Fry had e-mailed the exhibits to Thompson's attorney and testified telephonically at trial that he was intimately involved in the children's counseling; he directly supervised the therapists who worked with the children; he reviewed the children's files; he was involved with the treatment plans for the children; and he had discussions with the therapists both before the counseling sessions and after. Chaplain Fry also testified that he was the custodian of the records; that the records were kept in the ordinary course of the counseling process; and that they were made at or near the time of counseling. Holt objected to the telephonic authentication of these exhibits as business records by Chaplain Fry. In response, Thompson's counsel represented to the trial court that the documents submitted for admission were true and correct copies of the documents provided to him by Chaplain Fry.

The trial court acknowledged that Chaplain Fry could not see the exhibits, but it allowed the telephonic authentication. The trial court admitted the treatment plans (Exhibits 4-6) from Chaplain Counseling Services. The treatment plans included information that K.A.T. "self-report[ed] sexual abuse to her father"; all the children disclosed "beatings and being locked in a

---

[4] Exhibits 1-3 are process notes for each child; Exhibits 4-6 are treatment plans for each child; Exhibit 7 contains process notes for group sessions; Exhibit 8 is a timeline prepared by Chaplain Fry (Exhibit 8A is the signed verification page); Exhibit 9 is Chaplain Fry's letter to the Tacoma Police Department; and Exhibit 10 is Chaplain Fry's letter to Thompson's garrison commander.

closet without food for days at a time"; and T.L.T. disclosed Holt "pushed a tire on his leg and it was almost broken." Exs. 4-6. The trial court then admitted the signed verification from Chaplain Fry attesting that he supervised the counseling of the children at Chaplain Counseling Services (Ex. 8A). The trial court also admitted the letters that Chaplain Fry sent to the Tacoma Police Department (Ex. 9) and Thompson's garrison commander (Ex. 10) as a part of his reporting duties.[5]

Holt and her husband also testified at trial. During her testimony, Holt admitted to spanking the children with a spoon and roughly brushing her daughter's hair. Also, Holt's attorney extensively questioned them about the claims raised in the Hicks declaration (Ex. 13), reading significant portions of the Hicks declaration into the record. These claims included K.A.T.'s disclosures that "[h]er hair would be brushed very roughly" and being "beaten with the hair brush on [her] head, face, [and] back." Ex. 13. Other disclosures contained in the Hicks declaration included: being locked out of the house, being abandoned in various public places, being thrown into a pool, being hit in the head, and having food withheld. As a result of Holt's use of the Hicks declaration, Thompson moved to admit the Hicks declaration. Over Holt's objection, the trial court admitted the entirety of the Hicks declaration.

At the conclusion of trial, the trial court found:

2.2.1    The children have been living with the Father for over two years. Although this does not give rise to integration, it does provide a practical resolution to the case and is a large change from the original parenting plan.

2.2.2    During the s[u]mmer 2013 residential time the children revealed a series of chronic abuse events including physical, emotional and sexual in nature. The perpetrator was revealed to be the mother as far as the children were concerned.

---

[5] The remaining exhibits from Chaplain Counseling Services were excluded (Exs. 1, 2, 3, 7, and the remaining pages of Exhibit 8).

2.2.3    The mother admitted to spanking with a plastic spoon, rough hair brushing, and an incident regarding the child being thrown against their will into a pool.

2.2.4    The children sought counseling with Colleen Hicks, LMFT and Chaplain Stephen Fry and his interns.  Both counselors recommended specific treatment plans and both suggested that the children were not coached.

Clerk's Papers (CP) at 87.  The trial court also found that:

The following substantial change has occurred in the circumstances of either party or of the children:

2.7.1    The allegations of the children of chronic physical, sexual and emotional abuse were not disclosed at the time of the last parenting plan and the mother[']s denial does not diminish the severity of those allegations.

2.7.2    The children do not want to go back to their mother[']s care due to the abuse and potentially other reasons.

2.7.3    The number and variety of the allegations the children reported to everyone were consistent with specific details and that does suggest they were not coached. While there may have been some exaggerations by the children, the non-exaggerations of the children found by their counselors, who are found to be credible, lead to a substantial change in circumstance.  The court cannot however dismiss the serious allegations of physical abuse or sexual abuse that may have happened.

2.7.4    The Petitioner satisfied the burden of proof under the detriment environment basis.

2.7.5    Although the Court finds that the children were doing well in the care of their mother in school, this does not diminish the severity of the allegations made by the children.

CP at 88.  The trial court declined to follow the GAL's recommendation and found it "troubling" because "[o]n the eve of trial she contradict[ed] her original recommendations without providing any sufficient basis for . . . return[ing] the children to the mother and restrict[ing] the father's residential time, except based on coaching, or her conclusion that the children were coached."

6

3 VRP at 230. Accordingly, the trial court granted Thompson's petition to modify the current parenting plan and placed primary custody of the children with him.

Holt appeals.

## ANALYSIS

A. STANDARD OF REVIEW

A trial court's rulings on a parenting plan are reviewed for an abuse of discretion. *In re Marriage of Christel*, 101 Wn. App. 13, 20-21, 1 P.3d 600 (2000). We will not reverse a trial court's decision to modify a parenting plan under RCW 26.09.260 unless the trial court exercised its discretion in an untenable or manifestly unreasonable way. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). A trial court's decision rests on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it relies on an incorrect standard or the facts fail to meet the correct standard. *In re Marriage of Bowen*, 168 Wn. App. 581, 586-87, 279 P.3d 885, *review denied*, 176 Wn.2d 1009 (2012). A trial court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard. *Id.*

B. ADMISSION OF EVIDENCE

Holt argues that the trial court erred when it admitted the Hicks declaration, the records from Chaplain Counseling Services, and the testimony of Thompson and Brandy on the children's disclosures. We disagree.

We review the trial court's admission of evidence for an abuse of discretion. *State v. Thomas*, 150 Wn.2d 821, 856, 83 P.3d 970 (2004). A trial court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *State v. Barnett*, 104 Wn. App. 191,

199, 16 P.3d 74 (2001). "Appellate courts cannot substitute their own reasoning for the trial court's reasoning, absent an abuse of discretion." *State v. Lord*, 161 Wn.2d 276, 295, 165 P.3d 1251 (2007). This court will not reverse based on an error in admitting evidence if it does not result in prejudice. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). Prejudice results if, within a reasonable probability, the error materially affected the outcome of the trial. *Id*.

     1.    The Hicks Declaration

Holt argues that the trial court erred when it admitted the Hicks declaration.[6] We hold that the Hicks declaration was properly admitted under the rule of completeness, ER 106, because Holt's attorney read a significant portion of the declaration into the record through his questioning.

Under the rule of completeness, if a party introduces a statement, an adverse party may require the party to introduce any other part "which ought in fairness to be considered contemporaneously with it." ER 106; *State v. Larry*, 108 Wn. App. 894, 910, 34 P.3d 241 (2001), *review denied*, 146 Wn.2d 1022 (2002). Once part of a statement has been introduced into evidence, a party is entitled to seek admission of the remainder of the statement. *State v. Alsup*, 75 Wn. App. 128, 133, 876 P.2d 935 (1994); *see also Am. Aviation, Inc. v. Hinds*, 1 Wn. App. 959, 962, 465 P.2d 676 (1970) (holding that when records are inquired into by one party, the other party may be allowed to place the entire records before the court).

---

[6] Holt argues on appeal that the trial court erroneously admitted the Hicks declaration because Hicks did not testify and the business records exception does not apply. However, Holt only argued to the trial court that the Hicks declaration should not be admitted because Hicks did not testify and the declaration was not authenticated. In the trial court and on appeal, Thompson argues that the Hicks declaration is admissible because Holt's counsel read substantial portions of the contents of the declaration into the record during Holt's testimony.

Here, Holt's attorney read a substantial number of the children's statements that were contained in the Hicks declaration during direct examination of Holt and her husband. Given Holt's introduction of a significant portion of the Hicks declaration during questioning, Holt has failed to show that the trial court abused its discretion in admitting the entirety of the declaration. ER 106. Therefore, we hold that the trial court properly admitted the Hicks declaration under ER 106.

2.      Telephonic Authentication

Holt next argues that the trial court erred when it allowed Chaplain Fry to telephonically authenticate the records from Chaplain Counseling Services as business records.[7] We disagree.

Under RCW 5.45.020, records

> of an act, condition or event, shall . . . be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

The proponent must demonstrate that the record in question is a record of the business entity in question. *State v. DeVries*, 149 Wn.2d 842, 847-48, 72 P.3d 748 (2003). A business record may be authenticated through production by the custodian and identification by someone who has supervised its creation. *State v. Smith*, 16 Wn. App. 425, 433, 558 P.2d 265 (1976).

Holt relies on *DeVries*, where the Washington Supreme Court held that the trial court abused its discretion when it admitted a lab report of a urine test because the exhibit was not

---

[7] This argument applies to the treatment plans of the children (Exs. 4-6), the signed verification page (Ex. 8A), and the letters from Chaplain Fry to the Tacoma Police Department and garrison commander (Exs. 9 and 10).

properly identified and authenticated. 149 Wn.2d at 848. In *DeVries*, a lab report on a urine test was telephonically authenticated by the emergency room doctor that ordered the test; however, the doctor did not have the report in front of him when he testified nor did he have the report in his file. 149 Wn.2d at 845. Moreover, the prosecutor repeatedly and incorrectly referred to the report as a blood test. *Id.* at 847. The court held that the trial court abused its discretion when it admitted the lab report without proper foundation. *Id.* at 848. The court reasoned that the doctor could not say the report he saw before was the same one sought to be admitted and that the identification of the exhibit was further confused by the prosecutor's repeated reference to the exhibit as a blood test. *Id.* at 847.

The present case is distinct from *Devries* because the custodian, Chaplain Fry, testified that he was the custodian of the records provided to Thompson's counsel, he was responsible for maintaining the records, the documents submitted to Thompson's counsel were kept in the ordinary course of the counseling process, the records were made at or near the time of counseling, and that the copies he submitted to Thompson's counsel were true and correct copies of the file he maintained.[8] Chaplain Fry also testified that although he did not personally have a therapeutic relationship with the children, he directly supervised the therapists who worked with the children, he reviewed the children's files, he was involved with the treatment plans for the children, he had discussions with the therapists both before the counseling sessions and after, and he was intimately involved in the children's counseling.

---

[8] Thompson's counsel represented to the trial court that the documents submitted for admission were true and correct copies of the documents provided to him by Chaplain Fry.

Chaplain Fry's testimony properly authenticated the counseling records from Chaplain Counseling Services. Therefore, we hold that the trial court did not abuse its discretion in admitting the counseling records.

3. Thompson and Brandy's Testimony

Holt argues that the trial court erred when it admitted Thompson and Brandy's testimony about the disclosures of abuse the children made to them. We hold that the trial court abused its discretion in admitting such testimony because it was hearsay with no applicable exception. However, we also hold that the admission was harmless error.

a. Hearsay

Under ER 801(c), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Such statements are generally inadmissible unless an exception applies. ER 802, 803, 804.

Here, Thompson and Brandy testified to the children's disclosures of abuse they suffered while with Holt. Holt objected on the basis of hearsay, but the trial court allowed this testimony to continue. Although the court specified that it "want[ed] to hear how the issue was disclosed by the child" and try "to get an understanding of what's happening from each witness's perspective," this reasoning does not fall under an applicable hearsay exception. 1 VRP 50, 80. Thompson and Brandy testified to "statement[s], other than one made by the declarant while testifying at the trial," as such, the testimony was hearsay. ER 801(c). Therefore, we hold that the trial court abused its discretion when it admitted the testimony of Thompson and Brandy about the children's disclosures.

11

b.     Harmless Error

An error in admitting evidence that does not prejudice the defendant is not grounds for reversal. *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983). Prejudice exists when, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981). The improper admission of evidence constitutes harmless error if the evidence is minor in comparison to the overall, overwhelming evidence as a whole. *Bourgeois*, 133 Wn.2d at 403.

At trial, Thompson and Brandy testified that T.L.T. told them that if he did not break up Thompson and Brandy, he would get beat when he returned to Holt. Brandy also testified that K.A.T. disclosed abusive hair brushing and inappropriate touching while with Holt. While this testimony constituted hearsay and was erroneously admitted, as discussed above, such admissions were harmless because these allegations were presented through other pieces of evidence.

The same allegations that Brandy testified to were also presented within the children's treatment plans, the Hicks declaration, and the GAL's preliminary report, which were properly admitted. Specifically, K.A.T.'s treatment plan stated that she "self-report[ed] sexual abuse to her father," the Hicks declaration stated that "[h]er hair would be brushed very roughly" and she "would be beaten with the hair brush on [her] head, face, [and] back," and the GAL's preliminary report stated that "her mom touched her in inappropriate places and so did [her uncle]." Exs. 4, 13; CP (Sealed) at 9. And while Thompson's testimony of T.L.T.'s exact disclosures were not found within the other evidence, a multitude of other disclosures of abuse were presented. The children's treatment plans included disclosures of "beatings and being locked in a closet without

12

food for days at a time"; T.L.T.'s treatment plan also included a disclosure that Holt "pushed a tire on his leg and it was almost broken." Exs. 4-6. Furthermore, the Hicks declaration included disclosures of the children being locked out of the house, being abandoned in various public places, being thrown into a pool, being hit in the head, and having food withheld. Considering all the evidence, the outcome of the trial would not have been materially affected had the error not occurred. *Tharp*, 96 Wn.2d at 599. Therefore, the admission of Thompson and Brandy's hearsay testimony about the children's disclosures of abuse was harmless error.

C.    SUBSTANTIAL EVIDENCE

Holt argues that the trial court erred when it concluded that substantial evidence supported a finding that Holt's home was a detrimental environment. We disagree.

We review a trial court's findings of fact to determine whether substantial evidence supports the findings and whether those findings support the conclusions of law. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 341, 308 P.3d 791 (2013), *review denied*, 179 Wn.2d 1011 (2014). Substantial evidence exists when there is evidence sufficient to persuade a rational fair-minded person the premise is true. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

All reasonable inferences from the facts are viewed in the prevailing party's favor. *Scott's Excavating*, 176 Wn. App. at 342. And we do not "disturb findings of fact supported by substantial evidence even if there is conflicting evidence." *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). We also defer to the trial judge on issues of witness credibility and persuasiveness of the evidence. *Boeing Co. v. Heidy*, 147 Wn.2d 78, 87, 51 P.3d 793 (2002).

RCW 26.09.260 governs modifications of parenting plans:

(1) Except as otherwise provided in subsections (4), (5), (6), (8), and (10) of this section, the court shall not modify a prior custody decree or parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

(2) In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless:

. . . .

(c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Holt challenges several of the trial court's findings and conclusions. Holt argues that the only evidence supporting the trial court's findings were the inadmissible hearsay statements Thompson testified to, the inadmissible hearsay statements Brandy testified to, the inadmissible Hicks declaration, and the statements in the inadmissible Chaplain Counseling Services records. However, each of these challenges have been addressed above, and except for the inadmissible hearsay statements that Thompson and Brandy testified to, the trial court did not abuse its discretion in admitting the evidence. The erroneous admission of the children's hearsay statements through Thompson and Brandy was harmless because those same or similar statements were properly admitted through the children's treatment plans from Chaplain Counseling Services, the Hicks declaration, and the GAL's preliminary report. Therefore, substantial evidence supports each of the trial court's findings, and the findings support the trial court's conclusions.

C.      FAILURE TO FOLLOW GAL'S RECOMMENDATION'S

Holt argues that the trial court abused its discretion because it declined to follow the GAL's recommendation to place the children in Holt's primary care. We disagree.

A GAL is appointed to investigate the child and family situation for the court and to make recommendations about appropriate parenting arrangements. RCW 26.09.220; *Fernando v. Nieswandt*, 87 Wn. App. 103, 107, 940 P.2d 1380, *review denied*, 133 Wn.2d 1014 (1997). However, the trial court is "free to ignore the [GAL's] recommendations if they are not supported by other evidence or it finds other testimony more convincing." *Id*. The court is not bound by the GAL's recommendations because the child's interests are paramount. *McDaniels v. Carlson*, 108 Wn.2d 299, 312, 738 P.2d 254 (1987).

Here, the GAL's final recommendation was to return the children to Holt full time and grant her primary custody because the GAL believed that the children had been coached to make their allegations of abuse. The trial court found the GAL's final recommendation unconvincing. The trial court reasoned that the GAL's report was "troubling" because "[o]n the eve of trial she contradict[ed] her original recommendations without providing any sufficient basis for . . . return[ing] the children to the mother and restrict[ing] the father's residential time, except based on coaching, or her conclusion that the children were coached." 3 VRP at 230. Instead, the trial court found that the children's counselors were in the best position to determine whether the children were coached, the counselors were credible, and the counselors suggested the children were not coached. Also, the evidence showed that the children had made numerous and consistent allegations of physical, emotional, and sexual abuse suffered while in Holt's care, as discussed

above.  Therefore, in light of the evidence, we hold that the trial court did not abuse its discretion by declining to follow the GAL's recommendation.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Johanson, J.

_____
Bjorgen, C.J.